JAY WICKS, as Treasurer, etc., Respondent, *v.* EDWARD H. MONIHAN et al., Appellants.

No person, corporation or association, authorized to acquire and hold property, can be divested of it by the fiat of any other organization, or in any way without its consent, unless by due process of law.

An unincorporated association of seven or more members, organized as a local assembly of the organization known as "Knights of Labor," is not divested of title to property, contributed and owned by the associated members, by an annulment of its charter, and cannot be deprived thereof by any decree of the General Assembly.

After a local assembly is thus deprived of its charter, an action may be maintained by its president or treasurer to recover an indebtedness due the association. (Code Civ. Pro. § 1919.)

The distinction between such a case and that where a member of a club or voluntary association, in which the rights of the individual members are fixed by contract, has been expelled for violation of rules, pointed out.

Reported below, 54 Hun, 614.

(Argued October 26, 1891; decided December 1, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made September 10, 1889, which affirmed a judgment in favor of the plaintiff, entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward J. Meegan* for appellants. The referee erred in holding as a matter of law that the plaintiff was the real party in interest, and could maintain this action as treasurer of Local Assembly No. 4119 of the Knights of Labor. (*McFadden* v. *Murphy*, 149 Mass. 341; *Altmann* v. *Benz*, 27 N. J. Eq. 331; *Schmidt* v. *Gunther*, 5 Daly, 452; *Belton* v. *Hatch*, 109 N. Y. 598; *Hyde* v. *Woods*, 94 U. S. 523.) District Assembly No. 126, to which Local Assembly No. 4119 was attached, brought an appeal to the General Assembly, but before it could be heard this action was brought. Local Assembly No. 4119 might also have appealed, but it did not. This action was premature. Remedies provided for in the constitution should

first be exhausted. (*Lafond* v. *Deems*, 81 N. Y. 514; *Burns*
v. *B. Union*, 24 Abb. [N. C.] 150.) The legal effect of the
unreversed action of the general executive board was to deprive
the plaintiff and his associates as Knights of Labor of the title
to the note in suit. (*White* v. *Brownell*, 4 Abb. Pr. [N. S.]
194; *Grosvenor* v. *United, etc.*, 118 Mass. 78; *Brine* v. *Bd.
of Trade*, 2 Am. Law Reg. 268; *Thompson* v. *Adams*, 7
Wkly. Notes, 281; *Elsas* v. *Alfred*, 1 C. C. Rep. 123, 124;
Hirschl on Societies, 63; *Lloyd* v. *Loaring*, 8 Ves. 773; *Hyde*
v. *Woods*, 2 Saw. 655; 94 U. S. 523; *Poultney* v. *Bachman*,
31 Hun, 49; *McKane* v. *Adams*, 51 id. 629; *White* v.
*Brownell*, 2 Daly, 329; *People* v. *Young Men's, etc.*, 65
Barb. 357; *Snow* v. *Wheeler*, 113 Mass. 179; *Chamberlain* v.
*Lincoln*, 129 id. 70; *Altman* v. *Benz*, 27 N. J. Eq. 331;
*Osceola Tribe* v. *Schmidt*, 57 Md. 98; *Hall* v. *Supreme
Lodge*, 24 Fed. Rep. 450; *Robinson* v. *Yates City Lodge*, 86
Ill. 598; *Karcher* v. *Supreme Lodge*, 137 Mass. 368; *Sperry's
Appeal*, 116 Penn. St. 391.)

*Charles S. Nisbet* for respondent. The action was properly
brought by the plaintiff as treasurer of an unincorporated
association of seven or more persons. (Code Civ. Pro. § 1919;
*Tibbetts* v. *Blood*, 21 Barb. 650; *Poultney* v. *Bachman*, 10
Abb. [N. C.] 254; 4 id. 300, and note; 39 N. Y. S. R. 941;
74 id. 234.) It was not necessary that the note be indorsed by
the other payees, Perry, Ryland and Silber, trustees. It was
the property of the association. (Edwards on Bills and Notes
[2d ed.] 287; *Billings* v. *Jane*, 11 Barb. 620; *Clement* v.
*Adams*, 12 How. Pr. 163; *Van Riper* v. *Baldwin*, 19 Hun,
344.) The referee properly excluded a conversation on the
street between the defendant Stack and some one not named,
in reference to the defendants' liability to pay the note. It
was an attempt to vary or contradict the terms of the note by
parol evidence. (*S. & L. Bank* v. *Camp*, 21 How. Pr. 443;
*Potter* v. *Tallman*, 35 Barb. 182; *Erwin* v. *Sanders*, 1 Cow.
249; *F. N. Bank* v. *Tisdale*, 18 Hun, 151.) The contention
of the defendants that the plaintiff ought to have appealed

from the order of suspension to some superior body in the organization is not well taken. (*Lafond* v. *Deems*, 81 N. Y. 507; *Poultney* v. *Bachman*, 31 Hun, 49.) Even though the laws of the order of the Knights of Labor provide that the title to the property of an assembly suspended for insubordination vested elsewhere, still the courts would not enforce such provisions, the plaintiff and his association not having assented thereto. (*Austin* v. *Searing*, 16 N. Y. 112.)

FOLLETT, Ch. J. This action was begun August 1, 1887, to recover the amount due on the following note:

"$500.     AMSTERDAM, N. Y. *Nov. 23rd*, 1886.

"Six months after date we promise to pay to the order of William Perry, William Ryland, John Silber, trustees, and Jay Wicks, treasurer, five hundred dollars at the First National Bank of Amsterdam, value received with three per cent use.

"E. H. MONIHAN,<br>"JOHN C. STACK."

It is conceded that the note was given for money owned by the society and loaned to the defendants, and that no part of it has been paid.

The defenses interposed were: (1) That the note was given for money advanced and used to sustain a strike, upon the agreement that it was not to be paid if the strike failed, and that it did fail; (2) That the plaintiff, as treasurer could not maintain the action; (3) That Local Assemby No. 4119 since the note was given has been dissolved by a decree of the General Assembly of the Knights of Labor of America and all of the property of the former had become vested in the latter.

The defendants testified that the money was advanced to promote a strike, upon the agreement that it was not to be paid in case the strike failed, and that it did fail. This was denied by the plaintiff's treasurer, who made the loan, and this issue of fact was determined by the referee in favor of the plaintiff.

The referee found that Local Assembly No. 4119 was, when the note was given, and when the action was brought and

tried, an unincorporated association consisting of seven or
more persons; and if these facts were well found the action
was properly brought in the name of the treasurer.   (Code
Civ. Pro. § 1919.)

It is conceded that when the note was given and when this
action was tried an unincorporated voluntary association with
more than seven members existed at Amsterdam under the·
name of Local Assembly No. 4119 of the Knights of Labor.
While the existence of the association is not denied, it is urged
as a defense that the associated persons had, before this action
was begun, ceased to be a Local Assembly of the Knights of
Labor by reason of a decree of the General Assembly, of the·
order of Knights of Labor of America which assumed to annul
the charter of Local Assembly No. 4119 and directed that
all of its property should be turned over to the secretary of
the General Assembly.

There exists in America a voluntary unincorporated associa-
tion of persons known as the Knights of Labor having a
written constitution, sections 1 and 2 of art. 1 of which
provide: "§ 1. This body shall be known as the General
Assembly of the Knights of Labor of America, and shall be·
composed of representatives or alternates, selected according
to art. 2 of this constitution."

"§ 2. This General Assembly has full and final jurisdiction·
and is the highest tribunal of the order of the Knights of Labor.
It alone possesses the power and authority to make, amend or·
repeal the fundamental and general laws and regulations of
the order; to finally decide all controversies arising in the
order; to issue all charters to the state, district and local
assemblies." * * * How the "representatives or alter-
nates" composing the General Assembly are selected does not
appear, as the second article of the constitution is not given.
The constitution also provides: "A District Assembly shall
be composed of duly accredited delegates from at least five
Local Assemblies," but how they are selected is not disclosed.
It does appear that the organizations known as Local Assemblies.
are the units of the society, and that they are connected in

some manner not shown by the record, with District Assemblies, and that both Local and District Assemblies are attached and owe allegiance to the General Assembly. It does not appear from the record that any contractual relations ever existed between the District and Local associations; or between them, or either of them and the General Assembly. This case was defended on the theory that the General Assembly possessed, and could rightfully exercise autocratic governmental powers over all subordinate branches of the society; and that it could, by its order, without a hearing, expel from the organization any Local or District Assembly, and by that act become entitled to all the property of the assembly whose charter should be revoked.

In August, 1886, more than seven residents of Amsterdam, after having effected a preliminary organization, were chartered under the name of Local Assembly No. 4119 of the Knights of Labor by the General Assembly of Knights of Labor of America, and was attached to District Assembly No. 126. The District and Local Assembly continued attached to the General Assembly until May 26, 1887, when the charter of District Assembly No. 126 and the charters of all of the Local Assemblies attached thereto (including No. 4119) were revoked and annulled for disobedience of the orders of the General Assembly, and the master workmen of the District and Local Assemblies were directed to deliver their property to the general secretary of the General Assembly, pursuant to section 1 of article 5 of the Constitution of the General Assembly, which provides:

" Art. 5, § 1. It shall be the duty of the district recording secretary to collect and take charge of the charter, seals, books, money and other property of any Locals attached to the District Assembly that may lapse, and shall give receipt to the officer of the Local surrendering the same."

Local Assembly No. 4119 declined to surrender its property, including the note in suit, to the general secretary, but continued its local organization and retained possession of its property in defiance of the order of the General Assembly.

It is asserted that the order of the General Assembly *ipso facto* divested the Local Assembly of its title to the note in suit as well as to all other property held by it. This contention cannot be sustained on principle or authority. The precise question was determined in *Austin* v. *Searing* (16 N. Y. 112), which arose over the title of Cayuga Lodge No. 80 of the Independent Order of Odd Fellows to certain property in its possession. In that case, as in this, there was a supreme tribunal called the Grand Lodge of the Independent Order of Odd Fellows, in the United States of America, and, like the Knights of Labor, it had district organizations. By the constitution of the Odd Fellows, the Grand Lodge of the district had power to revoke the charters of all local lodges, and when revoked, to take possession of their property. The charter of Cayuga Lodge No. 80 was revoked for an alleged act of insubordination and a decree confiscating its property was promulgated. Nevertheless, the members of the lodge refused to surrender their property, but retained possession of it. Afterwards, a new lodge was chartered at Auburn by the Grand Lodge of the United States and given the same name and number as the old lodge, but composed of different persons from those associated as members of the first lodge. By the charter granted to the new lodge, all of the property which the Grand Lodge claimed to have acquired title to by confiscation was in form transferred to the new lodge. An action was brought by the persons associated and represented by the new lodge against the persons associated and represented by the old lodge for the recovery of the property in the possession of the old lodge. It was held that the provision in the constitution of the order giving the Grand Lodge power to confiscate the property of subordinate lodges, could not be enforced in the courts, and that the decree of the Grand Lodge revoking the charter of the insubordinate local lodge, did not divest it of its property, and that the plaintiff could not recover. This judgment has remained unquestioned for more than a third of a century, and is the law of this state to-day.

As before stated, this case was not tried upon a theory that

the organizations which constitute the order of Knights of Labor are bound together by any contract, or that Local Assembly No. 4119 had contracted with the General Assembly that, under certain circumstances, its property should be transferred to and become that of the General Assembly; but upon the theory that the General Assembly was vested with governmental powers, and could by its edicts divest the title of any District or Local Assembly to its property and vest it in itself without a hearing. This position cannot be sustained. The property of Local Assembly No. 4119 was not derived from the General Assembly, but was contributed and owned by the associated members of No. 4119, and held by an absolute title as perfect and unconditional, so far as is shown by the case, as is the title by which any person or corporation holds its individual property. To hold that the General Assembly can by a decree divest the title to property and vest it in itself, is giving to it a power which is forbidden to be exercised by congress, or by the legislature of any state. Bills confiscating the property of citizens, or of associations, without judicial process, are forbidden by the Constitution; and no person, corporation or association authorized to acquire and hold property, can be divested of it by the fiat of any organization, nor in any way without its consent, or by due process of law.

This case is quite different from those arising over the expulsion of members from clubs and voluntary associations for violation of rules. In those cases, the rights of the individual members are fixed by contract, and it is held that a member may be expelled by the association for violating the terms of the compact, provided, however, that due notice of the proposed action, and an opportunity for defense be given.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.