VICKSBURG LODGE No. 26 ET AL. *v.* GRAND LODGE OF FREE AND ACCEPTED MASONS OF MISSISSIPPI.

[76 South. 672, Division B.]

1. BENEFICIAL ASSOCIATIONS. *Rights of subordinate lodges.*

   Where in the by-laws of a Grand Lodge there was a provision that whenever a lodge shall become extinct, its property shall escheat to the Grand Lodge, and the same shall be sold and the proceeds applied to the payment of the lodge debts, and any residue credited to the grand lodge charity fund, such a provision is a regulation and not a contract between the grand and subordinate lodges, and will be construed most strongly against the Grand Lodge which enacted it and most favorably to the subordinate lodge and will not be construed to mean that the Grand Lodge can arrest or forfeit the charter of a subordinate lodge and by such act acquire the property belonging to such lodge.

2. SAME.

   The meaning of such a provision is that if from the negligence of the members of the subordinate lodge it ceases to exist or if for any reason they voluntarily surrender their charter and go out of business only in such case will the title to their property be vested in the Grand Lodge as a trustee for the purpose of paying the debts of the defunct lodge and devoting the remainder to the purpose of masonic charity.

3. BENEFICIAL ASSOCIATIONS. *Unconsionable rules.*

   Equity will not lend its aid in enforcing a forfeiture of the charter of a local lodge for some contumacy or misconduct of a subordinate lodge.

4. BENEFICIAL ASSOCIATIONS. *Lodges. Power of subordinate lodge.*

   A local lodge of the Grand Masonic Lodge which had become incorporated by the statute of the state empowering it to acquire and hold property, and giving it perpetual succession, cannot be deprived of its property by a revocation of its lodge charter by the Grand Lodge, which is without power to destroy a local lodge as a corporation of the state.

5. BENEFICIAL ASSOCIATIONS. *Lodges. Forfeiture of charter. Presumptions.*

   As under the laws of the land every person and corporation is entitled to resort to the courts, for redress of any grievance affect-

ing reputation and property under section 24 of the Constitution of the state and as under section 25 of the Constitution no person can be debarred from prosecuting and defending in any civil cause, and as under section 14 of the state Constitution, and the fourteenth amendment to the Federal Constitution no person can be deprived of life, liberty or property without due process of law, the court is bound to assume, in the absence of specific allegations and proof to the contrary that the grand lodge in forfeiting a charter of a subordinate lodge acted in accordance with its rules and proceeded from adequate cause.

APPEAL from the chancery court of Warren county. HON J. G. McGOWEN, chancellor.

Bill by Grand Lodge of Free and Accepted Masons of Mississippi against Vicksburg Lodge No. 26 and others. From the decree rendered, the defendant appeals.

The Grand Lodge of Free and Accepted Masons of Mississippi, a body incorporated under the laws of the state of Mississippi, W. H. Stevens Lodge, No. 121, of Free and Accepted Masons, Vicksburg Chapter, No. 3, of Royal Arch Masons, Vicksburg Council, No. 2, of Royal and Select Masters, and Magnolia Commandery, No. 2, Knights Templar, all bodies corporate under the laws of the state of Mississippi, filed a bill in the chancery court of Warren county, Miss., alleging: That said complainants are the true and legal owners of certain real estate in Vicksburg, Miss., being a lot and building thereon used for lodge purposes duly and properly described in the bill. That the said lands were patented by the United States Government to one Newit Vick and passed by a chain of conveyances to Vicksburg Lodge, No. 26, and that said Vicksburg Lodge, No. 26, was a subordinate lodge of the Grand Lodge of Mississippi, and was chartered by the said Grand Lodge in 1836. It is further alleged: That the various Masonic bodies of the city of Vicksburg at the date of the purchase of said lot in 1848 were Vicksburg Lodge, No. 26, Hill City Lodge, No. 121 (now W. H. Stevens Lodge, No. 121), Vicksburg Royal Arch Chapter, No. 3, Vicksburg Council, No. 2, of Royal and Select Masters, and Magnolia Commandery, No. 2,

Knights Templar, and that the said Masonic bodies proceeded to erect on said lot a four-story building for their common use. The first story was designed and intended to be rented for mercantile purposes; the second story to be used for the place of meeting for the various lodges; the third story for the Grand Lodge of Mississippi; and the fourth story for the Magnolia Commandery, No. 2, Knights Templar. That the title to said lot and building was in the various parties named and recognized by all of the bodies as being so vested, and that in the year 1853 a joint offer was made by Hill City Lodge, No. 121, and Vicksburg Lodge, No. 26, to the Grand Lodge of Mississippi, complainant here, of "their hall" for the use of said Grand Lodge, a copy of which offer is attached hereto as Exhibit D to the bill· That in the year 1867 the name of Hill City Lodge, No. 121, was changed to W. H. Stevens Lodge, No. 121, and that the complainants and those under whom they claim went into possession of the property described in the year 1848 and remained in undisturbed possession from said date down to the present time, and that such possession was open, notorious, adverse, peaceful, exclusive, continuous, and uninterrupted for a greater period than ten years, to wit, for sixty years. That afterwards Walnut Hill Lodge, No. 194, and B. Springer Lodge, No. 324, were chartered by the Grand Lodge and used said property jointly with the other Masonic bodies herein mentioned. It is further alleged that the joint possession and use of said lodge continued until 1873, at which time some question had arisen among the various bodies as to property rights in the building, and to settle this question a solemn concordat or agreement was entered into on the 22d day of November, 1873, by and between Vicksburg Lodge, No· 26, W. H. Stevens Lodge, No. 121, Walnut Hill Lodge, No. 194, B. Springer Lodge, No. 324, Vicksburg Royal Arch Chapter, No. 3, Vicksburg Council, No. 2, of Royal and Select Masters, and Magnolia Commandery, No. 2, Knights Templar whereby it was agreed that all the bodies should relin

quish and did relinquish all claim to the ownership of the said building, and that Vicksburg Lodge, No. 26, should hold title to said property as the trustee for "the Masonic fraternity in general and all Masons of this city (meaning Vicksburg) in particular," and further agreed that the said bodies should prorate amongst themselves the expenses of the upkeeping of the said building, and the rents and profits of the lower floor should be held inviolate as a general relief fund, to, be disposed of in accordance with the terms of the concordat. It is further alleged that under the laws of Masonry and rules and regulations of the Grand Lodge of Mississippi that when a charter of a subordinate lodge is arrested or the lodge becomes defunct, the title to the property belonging to the said defunct lodge vests at once in the Grand Lodge of Mississippi, as will appear by section 46 of the rules and regulations adopted by the Grand Lodge of Mississippi for the government of its subordinate lodges, as will appear in the Blue Lodge text-book, which said section 46 reads as follows:

Sec. 46. Whenever a lodge shall become extinct from any cause, its property shall escheat to the Grand Lodge, and the Grand Master shall cause the same to be sold, and the proceeds applied to the payment of the lodge debts, and the residue, if any, shall be credited to the Grand Lodge charity fund: Provided, that any lodge contemplating a surrender of its charter may by vote make any disposal of its property it may see fit, save and except its charter and records, which shall be deposited with the Grand Secretary."

It is further alleged that the B. Springer Lodge and Walnut Hill Lodge had passed out of existence; that Walnut Hill, No. 194, was consolidated with Vicksburg Lodge, No. 26, and that B. Springer Lodge's charter had been arrested by the Grand Lodge. It is then alleged that the Grand Lodge had arrested the charter of Vicksburg Lodge, No. 26, the appellant, in accordance with

the laws of the Grand Lodge of Mississippi on the 10th day of December, 1912, and that its property had passed to the Grand Lodge of Free and Accepted Masons of Mississippi. It is further charged that Vicksburg Lodge, No. 26, has executed a deed of trust on the property which was outstanding. It is then alleged that defendants Housken and Biedenaharn, Jr., have obtained possession of the property, and are claiming and asserting some ownership over the property which casts a cloud, doubt, or suspicion on the title of the claimants of the property, and that said defendants are advertising the building described for rent. The bill prays that Biedenaharn and Housken be made parties defendant, and that a receiver be appointed by the court to take charge of the building and collect all moneys, etc., and that a commissioner to state an account of the rents and profits, and that the claim of defendants be canceled and be held for naught, and that the court will construe the so-called concordat filed as an exhibit to the bill, and that the defendant People's Savings Bank & Loan Company be required to answer the true amount of indebtedness in the deed of trust. Vicksburg Lodge, No. 26, filed a petition to intervene as a defendant, which petition was allowed, and Vicksburg Lodge thereupon filed an answer and cross-appeal to the bill of complaint in which it denies the allegation of the ownership of the complainants, and of any right, title, or interest of any of the complainants in said property, alleging that the defendant Vicksburg Lodge, No. 26, is a body corporate under the laws of the state of Mississippi by virtue of an act of the legislature passed on the 21st day of February, 1836, which act of the legislature is set out and reads as follows:

"An act to incorporate the officers and members of the Vicksburg Lodge, No. 26, in the town of Vicksburg.

"1. Be it enacted, that the officers and members of Vicksburg Lodge, No. 26, of Free and Accepted Masons, in the town of Vicksburg, be and they are hereby declared a body politic and corporate by the name and style of

the 'Vicksburg Lodge, No· 26,' and by that name shall have perpetual succession, sue and be sued, plead and be impleaded, in any court of law, or equity, in this state, and shall have power to purchase, possess, and enjoy, for their own use and benefit, lands, tenements, and heredit-aments, not exceeding in value, twenty-five thousand dollars and personal property, not exceeding in value, five thousand dollars, and may alien and dispose of the same at pleasure.

"2. The said Vicksburg Lodge, No. 26, in their corpo-rate character, may contract and be contracted with, in the name of the said corporation, or in the name of any person, of persons, by them authorized; they shall have power to pass and adopt all such by-laws, as to them may seem just and expedient, for the good order and government of said corporation, not in-consistent with the Constitution and laws of the United States, or of the state of Mississippi, and may have and use a common seal, and alter the same at pleasure, and do and perform all other acts for their benefit not inconsistent with the privileges herein granted.

"Approved February 24, 1836."

'It is alleged in the answer and cross-bill: That the building on the said lot was erected solely by the defend-ant, the Vicksburg Lodge, No. 26, and denies that any concordant was entered into as alleged in the bill, but alleges that Vicksburg Lodge, No. 26, proposed to en-ter into an agreement embraced in the alleged concordat Exhibit F to the bill, provided all other lodges in Vicks-burg would release all claims against the property and assume a *pro rata* of the indebtedness against the build-ing set forth in the proposed agreement or concordat, and alleges that all of the lodges did not agree to such concordat, and never became effective or had any force, but that such concordat or alleged agreement was by one of the lodges placed on record in the deed records of Warren county, Miss., and constituted a cloud upon the title of Vicksburg Lodge, No. 26, by reason of which

it was unable to borrow money upon its property and otherwise handle and use its property, and that after requesting the concordat to be canceled and surrendered by the lodges named in the alleged .agreement, which request was refused, that it filed suit in the chancery court of Warren county to have the said instrument and its record in said deed record canceled, making the several complainants in this suit other than the ·Grand Lodge parties to said suit, and that the Grand Lodge of Mississippi intervened in said suit and was permitted to become a defendant therein, and that after so intervening that the Grand Lodge caused a committee to come to Vicksburg representing the Grand Lodge, and without notice to the attorney in the said suit representing Vicksburg Lodge, No. 26, said committee took evidence and reported to the Grand Master of Masons, and that the Grand Master of Masons, upon said report so made, proceeded .to arrest the charter of Vicksburg Lodge, No. 26. That the Grand Lodge of Mississippi was prior to 1871 an unincorporated, voluntary association of persons, but in said year and about the 10th day of April, 1871, said Grand Lodge procured a charter by an act of the legislature entitled "An act to incorporate the Grand Lodge of Free and Accepted Masons of the state of Mississippi, and for other purposes," which charter ·reads as follows:

"An act to incorporate the Grand Lodge of Free and Accepted Masons, of the state of Mississippi, and for other purposes.

"Section 1. Be it enacted by the legislature of the state of Mississippi, that the officers and members, and · all others who may hereafter become officers and members of the Grand Lodge of Free and Accepted Masons, of. the state of Mississippi, be and they are hereby declared a body corporate and politic under the name and style of the 'Grand Lodge of Mississippi,' and by that name and style shall have perpetual succession, may sue and be sued, plead and be impleaded, answer and be answered,

in any court of law or equity in this state; may have and use a common seal, and shall have full power to make and enforce such by-laws, rules and regulations as may be agreed upon by the members thereof, and to alter and amend the same at pleasure: Provided, the same are not inconsistent with or repugnant to the Constitution and laws of this state or of the United States.

"Sec. 2. Be it further enacted, that the Grand Lodge of Mississippi shall have full power and authority to hold, possess and enjoy real and personal property, and to sell and convey the same at pleasure, also to take, receive and apply such bequests or donations as may be made to and for the use and purpose intended by said institutions.

"Sec. 3. Be it further enacted, that all regular subordinate lodges constituted under the power and jurisdiction of the said Grand Lodge, together with such other regular subordinate lodges as may hereafter be constituted under the jurisdiction of said Grand Lodge, be and they are hereby declared to be bodies corporate and politic in name and deed, by whatever name or style they may be called or known, with equal rights and powers, to those which are by this act granted to the Grand Lodge, so long as the said subordinate lodges shall remain under the power and jurisdiction of the said Grand Lodge.

"Sec. 4. Be it further enacted, that this act shall take effect and be in force from and after its passage.

"Approved April 10, 1871."

They further allege that a committee representing Vicksburg Lodge, No. 26, went to the meeting of the Grand Lodge of Mississippi in 1913 at Gulfport, Miss., for the purpose of adjusting the differences between Vicksburg Lodge, No. 26, and the Grand Lodge, or a comittee representing it, agreed with the representatives of said Lodge No. 26 that if Vicksburg Lodge, No. 26, would dismiss the said suit and apologize to the Grand Lodge for bringing the said suit, and de-

liver up its charter to the Grand Lodge as required by the Grand Master, that such charter would be restored and the said Vicksburg Lodge, No. 26, be reinstated; but that the Grand Lodge after the said charter was delivered as agreed failed and refused to reinstate Vicksburg Lodge, No. 26, and restore its charter, but on the contrary passed a resolution approving the action of the Grand Master of the Grand Lodge in arresting its charter. The answer and cross-appeal also alleged that W. H. Stevens Lodge, No. 121, which came into existance in 1867, on the 8th day of April, 1885, consolidated with Vicksburg Lodge No. 26, the appellant and cross-complainant, and that all property of every kind belonging to the W. H. Stevens Lodge, 121, became vested in and became the property of the Vicksburg Lodge, No. 26, and that the W. H. Stevens Lodge, No. 121, now in existance was chartered by the Grand Lodge in the year 1901. It further alleges that the Vicksburg Royal Arch Chapter, No. 3, was incorporated by act of the legislature of Mississippi on the 27th day of January, 1848, and that Vicksburg Council, No. 2, of Royal and Select Masters, and Magnolia Commandery, No. 2, Knights Templar, have been since their organizations unincorporated, voluntary associations. The cross-bill alleges that it acquired the property in its character as a corporation of the state of Mississippi, and that the Grand Lodge had no power or right to dissolve or extinguish the charter granted by the state of Mississippi, and that it could not be deprived of its property without due process of law, and that it, at its own expense, erected the building in controversy, and that none of the complainants ever contributed thereto, and that it was the sole and entire owner of said building. It further alleges that it has been in exclusive and uninterrupted possession of said building, except that some of the lodges had occupied for a part of the time portions of the building under a lease or rent contract with the appellant.

They also allege that equity did not have the power to declare a forfeiture of the property, and that the Grand Lodge exceeded its power in arresting its charter and undertaking to forfeit its property. It is also alleged that the arrest of the charter under Masonic law did not *ipso facto* forfeit the charter; that the lodge continued as a lodge, but its operation was suspended during the period of suspension or arrest of the charter. The answer was made a cross-bill and the Grand Lodge and other complainants answered the cross-bill, and, in legal effect, admited most of the allegations of the cross-bill, but asserted that Vicksburg Lodge, No. 26, had regularly sent its representatives of the Grand Lodge, and such representatives had been admitted and participated in the proceedings of the Grand Lodge, and that the Grand Lodge had recognized its representatives as memebers of a subordinate lodge, and that Vicksburg Lodge, No. 26, had never claimed that they were acting by any other authority or under any other charter than as a subordinate lodge of the Free and Accepted Masons of the Grand Lodge of Mississippi, and that when Vicksburg Lodge, No. 26, filed the suit in Warren county, No. 7095, already referred to, that the Grand Lodge, acting under a valid, legally adopted and reasonable regulation of the Grand Lodge, arrested the charter of Vicksburg Lodge, No. 26, and that all property whether real or personal escheated to and vested in the Grand Lodge of Mississippi. In the answer to the cross-bill the Grand Lodge makes the following statement and admission with referance to its claim of the property involved in this suit:

"Your cross-respondent, the Grand Lodge of Mississippi, has never claimed the property in controversy as a lessee, or in any other manner, by contract, but its claim to an interest in the property is bottomed squarely on the rules and regulations as the Grand Lodge of Free and Accepted Masons of Mississippi, and having the right to govern and control all its

subordinate lodges, including the cross-complainant (Vicksburg Lodge, No. 26) in this cause."

*Theo. McKnight,* for appellant.

*Moody & Williams,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

(After stating the facts as above). By the clause last refered to in the statement of facts it will be seen that the Grand Lodge places its right to such property squarely upon the proposition that it, as governing body of subordinate lodges, had a right to make rules and regulations for the government of subordinate lodges, and for their infraction of such rules could arrest or forfeit the charter of subordinate lodges, and as a result of such arrest or forfeiture the property of the subordinate lodge *ipso facto* became the property of the Grand Lodge under section 46 of its rules and regulations quoted in the statement of facts.

Let us first consider the effect and meaning of section 46 of the rules and regulations above referred to. Is such section a contract, as contended in the brief of appellees, between the subordinate lodges and the Grand Lodge? And if it be a contract, is its effect and meaning broad enough to vest in the Grand Lodge all property of a subordinate lodge whose charter may be arrested by the Grand Lodge? We think the admission of the answer to the cross-bill as well as the real meaning of clause 46 is what it purports to be, a rule of law imposed upon the subordinate lodges by the Grand Lodge. In our opinion, the answer to the cross-bill interprets this provision correctly as being a rule or regulation of the Grand Lodge with reference to its being a law instead of a contract. In our judgment, the meaning of this provision is that if from the negligence of the members of the subordinate lodge it

ceases to exist, or if for any reason they voluntarily surrender their charter and go out of business and cease to exist as a local lodge and make no provision or disposition of their property, that in such case this regulation was intended to vest the title of such property in the Grand Lodge as a trustee for the purposes of paying the debts of the defunct lodge and devoting whatever should remain to the purposes of Masonic charity, giving the property acquired for Masonic use and purposes, to the causes and purposes of the Masonic fraternity as understood and administered in its charity work. It was not, in our opinion, intended, and this provision cannot be construed to mean, that the Grand Lodge can arrest or forfeit the charter of a subordinate lodge and by such an act on its part alone itself acquire the property belonging to a subordinate lodge. The clause is to be construed most strongly against the Grand Lodge which enacted it and most favorably to the subordinate lodges which are to be affected by it.

If the construction contended for by counsel for the appellee were accepted as the correct construction, then in this case it would be simply a forfeiture for some contumacy or misconduct of the subordinate lodge, and equity would not lend its aid in enforcing the forfeiture. *Thornton et al.* v. *City of Natchez*, 88 Miss. 1, 41 So. 498; *Mississippi Railroad Commission* v. *Gulf, etc., R. R. Co.*, 78 Miss. 750, 29 So. 789. We think the record shows that the property in question was acquired in the capacity of a corporation under the laws of the state of Mississippi, and under its charter set out in the statement of facts this corporation had perpetual succession, power to sue and to be sued, to purchase, to possess, and enjoy for their own use and benefit land, tenements, and hereditaments not exceeding twenty- five thousand dollars in value, and has the power to sell and dispose of such property at pleasure. It also has the power to contract

and be contracted with in the name of said corporation and in the name of any person or persons, authorized by them, and power to adopt all by-laws, etc., not inconsistent with the Constitution or laws of the state. Being a creature of the state of Mississippi having the right to perpetual succession by operation of the law of the state, it could not be dissolved by an action of any other body than the creator, the state of Mississippi, acting through its proper agents and officers. The record shows that after the charter was arrested and before its forfeiture the members of the lodge met and organized the board of directors in accordance with the state charter, and made provision and directions with reference to its property. The chancery court held that the property was the property of the Grand Lodge of Mississippi, and ordered the property sold by commissioners to be applied in accordance with the regulations of the Grand Lodge. We think the chancellor erred in his conclusions, and that under the facts in this record the Grand Lodge acquired no right, title, or interest in this property. It had the right, if it pursued it in the proper way and according to its rules and regulations, to sever the relations between it and the subordinate lodge and to cancel such rights it had conferred by virtue of the charter granted by it and by its rules and regulations. But it did not have the right and power to take from the corporation created under the laws of the state its property without due process of law. Under their charters, both the Grand Lodge and Vicksburg Lodge, No. 26, have all rights conferred under their respective charters, and cannot be deprived of them in any other way than according to the law of the land and due process of law. See *Austin* v. *Searing,* 16 N. Y. 112, 69 Am. Dec. 665; *Wicks* v. *Monihan,* 14 L. R. A. 243, 130 N. Y. 232, 29 N. E. 139; *Merrill Lodge* v. *Ellsworth,* 78 Cal. 166, 20 Pac. 399. 2 L. R. A. 841. The principles announced in these cases are supported in part by *Mt. Helm Baptist Church* v. *Jones,* 79 Miss, 488, 30 So. 714,

which holds that property rights of religious and other associations are within the protection of the court. In other words, in dealing with all questions of fraternal and social relations the organization may adopt rules and regulations, by which subordinate lodges agree to or are bound to obey, and which are to govern in their trial before the Grand Lodge, but when property rights are sought to be taken by virtue of these interrelations the courts are open, and they must be taken in accordance with the law of the land.

We are asked by the appellant further to adjudicate the allegations that the Grand Lodge in arresting the charter and forfeiting the property exceeded its power, and we are asked to protect the lodge in its rights within the organization. It seems to be suggested in the pleadings that the charter was arrested and forfeited because of the institution of a suit in the courts of the state for the protection of propery rights and that this was in excess of the powers of the Grand Lodge. It is also suggested in the testimony that the charter was arrested and later forfeited without notice and hearing to the Vicksburg Lodge, No. 26, and without an opportunity on its part to appear and present a defense, or produce testimony bearing on these questions. The pleadings in the case do not disclose definitely and certainly what offense, if any, prompted the Grand Master of the Grand Lodge in arresting the charter. No rule or regulation of the Grand Lodge has been pointed out in the pleadings that constitute the foundation of the forfeiture, nor is it clearly and distinctly alleged in the pleadings that the action of the Grand Master and the Grand Lodge was without hearing or notice or opportunity to defend. It appears that the institution of the suit in cause No. 7095 by Vicksburg Lodge, No. 26, in the chancery court had some bearing upon the action of the Grand Master and of the Grand Lodge in taking the action they took. The Grand Lodge is the creature of the state (in its present corpo-

rate capacity), and its power to enact by-laws is given, provided they do not conflict with the law of the land. As under the law of the land every person and corporation is entitled to resort to the courts, for redress of any grievance affecting life, liberty, reputation, and property under section 24 of the Constitution of the state, and as under section 25 of the Constitution no person can be debarred from prosecuting and defending in any civil cause, and as under section 14 of the state Constitution, and the Fourteenth Amendment to the federal Constitution no person can be deprived of life, liberty, or property without due process of law, we are bound to assume, under the allegations and proof in this case, that the institution of the suit in cause No. 7095 was not the sole cause of the action on the part of the Grand Lodge. On the allegations and proof in this record we are bound to presume that the lodge acted in accordance with its rules and regulations, and proceeded from adequate cause to act as it did. We cannot believe that the action of the Grand Lodge was arbitrary and without reason. If such be the case, it would have to be alleged and proven. It is admitted in the court below that the concordat was of no effect, and also in the answer to the cross-bill. It seems to us from a careful and attentive study of this case that there must have been some mutual misunderstanding of the facts by the bodies involved in the suit. We trust that some method may be devised whereby the unhappy situation may be remedied by some satisfactory measure acceded to by all parties. It strikes us that the property should be continued to be used for the benevolent and laudable purposes of the fraternity, and some amicable adjustment ought to be made to restore the property to local Masonic uses. There are, or sometimes may be, relinquishments and concessions that can be made in the interest of harmony and the general welfare. From the reputation of the great Masonic fraternity we believe that with proper effort

the right of all parties may be protected. On the plead-
ing and proof in this suit we cannot determine the rights
of the members of Vicksburg Lodge, No. 26, what-
ever they may be, as they existed when the charter was
arrested and forfeited. Some of them have, as shown
by the record, gone to other lodges, and we do not
wish to be understood in this opinion as foreclosing
a proceeding under proper allegations to take care of
whatever right they may have. We trust that this
question can be settled without further litigation, but
on the record as it stands we feel that we are bound to
reverse the chancellor and dismiss the bill of complaint
as to all of the complainants.

Reversed and remanded, with direction to the court
below to dismiss the bill and wind up the receivership.

*Reversed and remanded.*