ALEX KELSO, as Treasurer of the District Council of New York City of the United Brotherhood of Carpenters and Joiners of America, and Others, Plaintiffs, *v.* JAMES T. CAVANAGH, as President of Local Union 585 of the United Brotherhood of Carpenters and Joiners of America, and Others, Defendants.

Supreme Court, New York County, July 14, 1930.

*Seligsberg & Lewis* [*Donald Marks* of counsel], for the motion.
*Emerich Kohn*, opposed.

UNTERMYER, J. The District Council of New York City of the United Brotherhood of Carpenters and Joiners of America, which is represented in this suit by the plaintiff Kelso, its secretary and treasurer, is a voluntary unincorporated association consisting of more than seven members, having its offices in Indianapolis, Ind. Local 585 of the United Brotherhood of Carpenters and Joiners of America, represented in this suit by its president, James T. Cavanagh, is also a voluntary unincorporated association consisting of more than seven members, with offices in New York city, and until February 25, 1930, was a subordinate body of the district council from which it held a charter. It is alleged that

on February 25, 1930, local 585 was suspended by the district council and that its charter as a member of the district council was revoked; that at the time of its suspension local 585 had on deposit in the three defendant banks sums of money aggregating $15,000 and that, in consequence of the revocation of its charter, these banks have refused to recognize checks or withdrawal orders of the officers of local 585, which has no other property with which to satisfy the plaintiffs' claims. It is accordingly alleged upon information and belief that by reason of the suspension of local 585 its funds on deposit in the defendant banks are now held by said banks in trust for the creditors of local 585 and for those who compose its membership.

The three plaintiffs have united in one complaint three distinct causes of action. The plaintiff Kelso, suing on behalf of the district council, demands judgment for $1,250.50, alleged to be due from local 585 to the district council as the capita tax from September, 1929, to February 21, 1930. The plaintiff Jose demands judgment for $4,200, alleged to be due as salary for services rendered by him as business agent of local 585 from May 14, 1929, to February 25, 1930. He alleges his election to that office in December, 1928, for a period of three years from January 1, 1929. The plaintiff Fessler demands judgment for $680 as salary for services rendered by him as financial secretary of local 585 from January 1, 1930, to February 25, 1930. He alleges his election to that office in June, 1929, for a period of one year from July 1, 1929.

The question presented is whether these three plaintiffs may unite these causes of action in one complaint under section 209 of the Civil Practice Act, which so far as material here provides: " All persons may be joined in one action as plaintiffs, in whom any right to relief in respect of or arising out of the same transaction or series of transactions is alleged to exist whether jointly, severally or in the alternative, where if such persons brought separate actions any common question of law or fact would arise." In order to justify the union in one suit of separate causes of action by different plaintiffs under this section of the Civil Practice Act two conditions must concur: (1) The causes of action must arise out of the same transaction, or series of transactions, and (2) they must present some common question of law or fact.

The causes of action here do not meet the first of these requirements nor the second. The cause of action asserted by Kelso is for capita taxes arising out of the previous affiliation of local 585 with the district council. The cause of action asserted by Jose is for salary as business agent of local 585 arising out of his election to that office in December, 1928. The cause of action asserted

by Fessler arises out of his election in June, 1929, to the office of financial secretary of local 585. The liability to each plaintiff originated at a different time and, it is fair to assume, under different conditions. The separate liability to each plaintiff differed as much in character as it did in origin; nor does the complaint suggest that liability to these plaintiffs was incurred in consequence of any wrongful act which simultaneously ended the relations of all the plaintiffs with local 585. Payment for services rendered and for taxes incurred during varying periods is the purpose of the suit; it is not for damages caused by any wrongful interruption of the relations of the parties. It is true that the courts have accorded a liberal construction to section 209 of the Civil Practice Act in order to give full effect to its remedial provisions (*Akely* v. *Kinnicutt*, 238 N. Y. 466), but this has been in cases where the same evidence would have tended to establish, at least in part, the liability of the defendant to all the plaintiffs. Such a situation exists where injury has resulted to many plaintiffs from a single catastrophe. (*Metropolitan Casualty Ins. Co.* v. *Lehigh Valley R. R. Co.*, 94 N. J. Law, 236.) It exists where one prospectus, circulated by the defendants, has induced the purchase of stock by different plaintiffs although at different times and under different circumstances. (*Akely* v. *Kinnicutt, supra; Drincqbier* v. *Wood*, L. R. [1899] 1 Ch. Div. 393.) It exists where several plaintiffs have been damaged by the same libelous publication. (*Peacock* v. *Tata Sons, Ltd.*, 206 App. Div. 145.) These are " the same transaction or series of transactions." But here, at least so far as the defendant Cavanagh is concerned, evidence that might be relevant upon any one cause of action would not be relevant to any other. There are here three plaintiffs suing upon three contracts having no connection with one another; three causes of action without legal affinity. The aim of the statute — to dispense with duplication of proof — is not frustrated by failing to apply it to causes of action which present no unifying element.

It is sought to justify the union of these three causes of action by these plaintiffs by reason of the joinder of the banks as defendants. The banks are joined upon allegations that, after the suspension of local 585, they refused to recognize its checks and that " by reason of said suspension of Local 585 and the revocation of its Charter the moneys in the defendant Banks to the credit of said Local Union is held by said defendant Banks in trust for the creditors of said Local Union as well as the persons who composed the membership thereof." It is, therefore, suggested that by operation of law a trust liability was imposed upon each of the defendant banks in favor of each of the plaintiffs which arose out of the same

transaction — " suspension of Local 585 and the revocation of its Charter." I am of the opinion that this conclusion of law is without foundation; that the suspension of local 585 did not convert those indebted to the local into trustees for its creditors; that, therefore, no cause of action is stated against the defendant banks, and that the plaintiffs, by improperly including the banks as defendants, should not be permitted to unite causes of action against the defendant Cavanagh which are not otherwise related and which otherwise could not be joined.

Local 585 is a voluntary unincorporated association of more than seven members. Assuming, as alleged, that · on February 25, 1930, its rights as a constituent member of the district council were terminated by the revocation of its charter, this did not affect the structure of the local; it only severed its affiliation with the parent body.. Neither the United Brotherhood nor the district council had power to dissolve local 585 (*Wells* v. *Monihan*, 129 N. Y. 161; *Grand Court, etc.*, v. *Court Cavour, etc.*, 82 N. J. Eq. 89), nor is it alleged that this was attempted to be done. They had no power over the property rights of the local as between the local and its debtors or creditors. (*Wicks* v. *Monihan*, 130 N. Y. 232; *Wells* v. *Monihan, supra; Austin* v. *Searing*, 16 N. Y. 112; *Grand Court, etc.*, v. *Court Cavour, etc., supra.*) It follows that local 585 has every power necessary to collect its debts, pay its creditors and distribute its surplus. It may sue and be sued as provided by sections 12 and 13 of the General Associations Law (added by Laws of 1920, chap. 915) and a judgment against it may be enforced against its property. (Gen. Assn. Law, § 15, added by Laws of 1920, chap. 915.) The allegation of the complaint, therefore, made upon information and belief, that " by reason of said suspension of Local 585 " the funds in the defendant banks are held " in trust for the creditors of said Local Union " constitutes a conclusion of law which the facts alleged do not sustain. It is sufficient to say that upon this question of law the plaintiffs' " information " is not correct and its " belief " is without foundation. The obligations here were those of the association; they were not the obligations of the banks; nor are they converted into such by the circumstances that the banks have declined to recognize the checks and orders of the local. That may present a controversy between the local and the banks. It presents none between the banks and the plaintiffs. The plaintiffs' claims, if reduced to judgment, may then, it is true, be enforced according to law against the property of the local, including any outstanding credits; until then they may not be enforced against their debtor's debtor on the fiction of a trust relationship.

It cannot, therefore, be said that, as to the defendant Cavanagh, the alleged causes of action arise out of the same transaction or that this essential element is supplied by the joinder of the banks as defendants, since no cause of action is stated against them. Accordingly the defendant Cavanagh is entitled to be served with separate complaints upon each of the three causes of action contained in the complaint. He is entitled to this as a matter of right because the conditions prescribed by section 209 of the Civil Practice Act do not exist. He is also entitled to this as a matter of discretion. Assuming that the banks are properly joined as defendants and that there exists a common question which concerns their liability as trustees arising out of the suspension of the local, the common issue thus presented is not of sufficient relative importance to justify a common trial of the separate major issues underlying each cause of action. (*Akely* v. *Kinnicutt*, 238 N. Y. 466.) This misjoinder of parties plaintiff does not, however, justify the dismissal of the complaint under rule 106 of the Rules of Civil Practice. (*New Amsterdam Casualty Co.* v. *Mobinco Brokerage Co., Inc.*, 219 App. Div. 486; *Pleaters & Stitchers Association, Inc.*, v. *Taft*, 131 Misc. 506.) The motion, however, is made also under rule 102 of the Rules of Civil Practice and is granted to the extent of requiring each of the plaintiffs to serve a separate amended complaint stating his individual cause of action. (*Seggerman Bros., Inc.*, v. *Rosenberg Bros. & Co.*, 217 App. Div. 7.) Order signed.