Franklin *v.* Parallel Lodge No. 77.

4-5165

Opinion delivered October 3, 1938.

Caudle & White, S. A. Jones and J. R. Booker, for appellant.

J. M. Smallwood, for appellees.

Griffin Smith, C. J.   In the year 1900 A. E. Lucker and his wife executed a warranty deed conveying the two town lots which form the subject-matter of this appeal.   Grantees were the worshipful master, the senior warden, and the junior warden of Parallel Lodge No. 77, Free and Accepted Masons of America.   The habendum clause contained this language:  ''To have and to hold the same unto the said Chas. I. May, Thos. Simms, and Smith Hunter, as worshipful master, senior warden, and junior warden, as aforesaid, and unto their successors in office and assigns forever, with all appurtenances thereunto belonging, in trust for the use and benefit of Parallel Lodge No. 77, F. & A. M.''

March 13, 1937, the Lodge, by W. C. James, Roy Thompson, and R. E. Black, who styled themselves ''trustees in succession,'' filed suit in Pope circuit court and prayed judgment for possession of the property.

Mary Franklin answered, claiming that in 1936 she purchased the two lots for $25.   The instrument of conveyance, existence of which was testified to by appellant

and referred to in her complaint, does not appear in the record. However, she says such deed was executed by the Grand Lodge of Arkansas.

There was testimony that James, Thompson, and Black, were worshipful master, senior warden, and junior warden, respectively. There was also testimony that the local lodge ceased to function about 1930; that its members discontinued payment of dues, and that it remained inactive until shortly after appellant purchased the lots. Other testimony was that there had been no disintegration of the local organization, although payment of dues to the Grand Lodge was refused when the Masonic Benefit Association failed to pay death claims and went into receivership.

On behalf of appellant there was testimony by E. U. Reed, grand master of the Masonic Grand Lodge, that Parallel Lodge did not pay dues. to the Grand Lodge after 1931. Reed testified that two reports were required, one to Masonic Benefit Association, and one to the Grand Lodge, with remittances of $1.25 per calendar quarter per capita for insurance, and 25 cents per quarter for the Grand Lodge. He said: "Then the Masonic Benefit Association, or the insurance department, went into receivership, and this lodge ceased to pay anything. They didn't pay their Grand Lodge dues, or anything else."

Reed testified that the insurance department and the Grand Lodge were separate entities; that the Grand Lodge was a corporation, and that the constitution provided that when a subordinate lodge ceased to pay its dues to the Grand Lodge for more than one year, all property of the subordinate lodge vested in the Grand Lodge. The section of the constitution in question is: "No lodge can suspend its by-laws or either of them. Upon the forfeiture or surrender of its charter, the jewels, records and property of the lodge escheat to the Grand Lodge."

The trial court took the case from the jury and gave judgment in favor of the local lodge, but allowed Mary Franklin sixty days from December 29, 1937, to

move a building, which she had erected on the property at an alleged cost of $400.

We are of the opinion that title to the property, having become vested in trustees and their successors for the benefit of Parallel Lodge, did not, *ipso facto,* become divested and vest in the Grand Lodge. At the time the property was acquired, Parallel Lodge was in good standing with the parent organization, and it seems to have continued so for more than thirty years. The trust created by the deed is unconditional. Acts through which an escheat would occur are incorporated in the by-laws or constitution of the Grand Lodge, and so far as the deed in question is concerned, such acts are conditions subsequent.

In this case it is admitted that members of Parallel Lodge refused to pay dues. On the other hand, those who testified undertook to justify such refusal. While it is true the grand master testified that when the Grand Lodge met in 1932 a forfeiture of the charter of Parallel Lodge was declared, it is equally true that demand for a surrender of the charter did not occur until 1934. Whether provisions were contained in the Grand Lodge laws for reinstatement of a delinquent lodge does not appear.

In Ruling Case Law, Vol. 19, at p. 1222, the following rule is announced as applicable to organizations similar to that with which we are dealing: "Upon the revocation of the charter of a subordinate lodge or association by the supreme body of the organization, the property belonging to the former does not become that of the latter, and provision to that effect made by the supreme lodge or council is void as a confiscation, without judicial process, of property owned by the subordinate body. As provisions of this nature are contrary to public policy, the mere fact that the members of the subordinate lodge assented thereto at the time of their admission to the association does not except the case from the operation of the general rule."

For other authorities see *Wicks* v. *Monihan,* 130 N. Y. 232, 29 N. E. 139, reported in 14 L. R. A. at p. 243; *Merrill Lodge, etc.,* v. *Ellsworth,* 78 Cal. 166, 20 Pac.

399, 2 L. R. A. 841; *State Council, etc.,* v. *Emery,* 219 Pa. St. 461, 68 Atl. 1023, 12 Ann. Cas. 870, 15 L. R. A. N. S., 336; *Goodman* v. *Jedidjah Lodge No. 7,* 67 Md. 117, 9 Atl. 13, 13 Atl. 627.

These decisions pronounce a sound public policy, and are predicated upon such; and they are in harmony with the text quoted from Ruling Case Law.

The trial court granted appellant the right to remove the building. There is no reference in the record to § 4658 of Pope's Digest, known as the betterment statute. It will be presumed that appellant elected to remove the building in substitution of betterments. A period of sixty days from date of mandate from this court will be allowed for such removal.

Affirmed.