# State Council Junior Order of United American Mechanics of Pennsylvania, Appellant, *v.* Emery.

*Beneficial associations—Corporations—Subordinate lodges—Title to moneys—Sick and funeral benefits.*

Funds raised by the members of a subordinate body of a beneficial association for sick and funeral benefits, belong to the subordinate association, and are to be distributed by it to the parties for whose use and benefit they were contributed. The revocation of the charter of a subordinate body by the supreme body cannot have the effect of confiscating the property owned absolutely by the local body. The Act of June 20, 1883, P. L. 132, does not change in any way the application of this principle in Pennsylvania.

Where funds contributed by members of the subordinate body for sick and funeral benefits have been distributed to beneficiaries before a final decree of the court affirming the revocation of the charter of the subordinate body by the supreme body, the members of the subordinate body cannot be compelled by a court of equity to account to the supreme body for the fund in question; and this is especially so where it appears that the fund was in the hands of trustees, and had never in fact been in the hands of the members.

ELKIN, J., dissents.

Argued Oct. 31, 1907. Appeal, No. 88, Oct. T., 1907, by plaintiff, from decree of C. P. No. 1, Allegheny Co., March T., 1905, No. 58½, dismissing bill in equity in case of State Council Junior Order of United American Mechanics of Pennsylvania v. William S. J. Emery et al. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an account. Before OVER, J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*W. U. Hensel*, with him *A. D. Wilkin* and *Smith W. Bennett*, for appellant.—The corporation was created to carry out the general purposes of a beneficial society, which clearly in-

clude the power to assume and to administer a trust, as here asserted, and as clearly do the general powers include the same: Derry Council v. State Council, 197 Pa. 413; Grand Lodge v. Germania Lodge, 56 N. J. Eq. 63 (38 Atl. Repr. 341).

Majority of the members of the subordinate division of a beneficial organization, made up of numerous subordinate councils, cannot carry the division or its property over to another association, against the will of the minority: Gorman v. O'Connor, 155 Pa. 239; Kane v. Shields, 167 Mass. 392 (45 N. E. Repr. 758); Derry Council v. State Council, 197 Pa. 413; Union Benevolent Society v. Martin, 67 S. W. Repr. 38.

Members seceding from an association, abandon their rights in the associate property to those who retain their membership in the regular organization: Krecker v. Shirey, 163 Pa. 534; McGinnis v. Watson, 41 Pa. 9; Winebrenner v. Colder, 43 Pa. 244; Schnorr's App., 67 Pa. 138; Roshi's App., 69 Pa. 462; McAuley's App., 77 Pa. 397; Gorman v. O'Connor, 155 Pa. 239; Bose v. Christ, 193 Pa. 13; Manning v. Shoemaker, 7 Pa. Superior Ct. 375; Washington v. White, 27 P. L. J. (N. S.) 338; Garrett v. Nace, 5 Pa. Superior Ct. 475; Kerr v. Trego, 47 Pa. 292; Presbyterian Congregation v. Johnston, 1 W. & S. 9; Sutter v. Trustees, 42 Pa. 503; Schubert Lodge v. Untersturzen Verein, 56 N. J. Eq. 78 (38 Atl. Repr. 347); Koerner Lodge v. Grand Lodge, 45 N. E. Repr. 1103; Kerm v. Arbeiter Verein, 102 N. W. Repr. 746.

*W. B. Rodgers*, with him *W. G. Negley*, for appellee.—The jurisdiction or authority of a superior over a subordinate body in a patriotic, civic or fraternal benefit society, is limited to discipline and membership standing. The courts will not uphold any attempt on the part of the superior to interfere with the property rights of the subordinate: Austin v. Searing, 16 N. Y. 112; Carlton v. Southern Mutual Ins. Co., 72 Ga. 371; Birmingham v. Gallagher, 112 Mass. 190; Bauer v. Samson Lodge, 102 Ind. 262 (1 N. E. Repr. 571).

A superior has no right to intermeddle with the funds of a subordinate body in which it has no interest: Independent Order of Foresters v. Donahue, 91 Ill. App. 585; Babb v. Reed, 5 Rawle, 151.

When a fund is created by voluntary contributions of the

ORDER UNITED AM. MECH'S, Appellant, *v.* EMERY. 463

members of a subordinate body, a superior body cannot acquire an interest therein by forfeiture of the warrant of the subordinate body: Wicks v. Monihan, 130 N. Y. 232 (29 N. E. Repr. 139); Wells v. Monihan, 129 N. Y. 161 (29 N. E. Repr. 232); Merrill Lodge v. Ellsworth, 78 Cal. 166 (20 Pac. Repr. 399).

OPINION BY MR. JUSTICE POTTER, January 6, 1908:

This was a bill in equity filed by the State Council Junior Order of United American Mechanics of Pennsylvania, a corporation, against William S. J. Emery and others, described as "fourteen members of Duquesne Lodge, No. 110, Junior Order United American Mechanics of Pennsylvania, formerly an unincorporated beneficial society, and now pretending and assuming to act as such members and as officers of said Council." There was no dispute as to the facts on which the suit was based.

It appears that a division in the state organization of the Junior Order of United American Mechanics arose in Pennsylvania during the year 1900, resulting in the formation of two factions. On October 2, 1900, Duquesne Lodge, No. 110, by formal resolution, declared its adherence to the faction of the state council, headed by S. B. Woods. The other faction recognized Wobensmith. Duquesne Council refused to pay to the state council organization, headed by Wobensmith, certain per capita taxes, and, for that reason, on August 22, 1901, the state council, acting in accordance with its constitution and by-laws, suspended the Duquesne council from the privileges of membership, and on January 6, 1903, revoked its charter for the same reason. On May 10, 1904, in quo warranto proceedings in court of common pleas, No. 4, of Philadelphia county, it was adjudged that the officers, headed by Wobensmith, were the legal officers of the state council, and that the Woods faction, to which the Duquesne council had given its adherence, was not entitled to the offices. This decree was not appealed from, and it is conceded that it has settled that controversy.

On November 29, 1904, the state council, whose legality had been thus established, made demand upon defendants, as former members of the Duquesne council, for "all the books,

papers, charters, paraphernalia, funds and properties of what-soever nature and kind " in their possession and control. Defendants tendered all the effects demanded except a sum of money contributed for sick and funeral benefits, and which was shown to have amounted on January 6, 1903, when the charter was revoked, to $2,037.18. The present bill was filed to compel the defendants to account for and pay over this fund to the state council. While the prayers of the bill are drawn to cover all property and effects of the Duquesne council, the controversy between the parties is only as to the fund in question.

This fund was contributed by members of Duquesne council, prior to the date when its charter was revoked, under the following provisions in its constitution : " The dues of this council shall be such sums as shall be prescribed by the by-laws, which shall in no case be less than ten cents per week, which shall constitute a fund for the relief of sick and disabled members, and such other purposes as the council may deem judicious and such further sums as the by-laws shall prescribe for funeral dues, or to sustain their treasury."

" Each council shall have power by their by-laws to credit the first money paid in by a member to his indebtedness for funeral and other charges, and the balance, if any, shall be credited to his dues."

And the following by-laws : " The regular weekly dues of each contributing member of this council shall be fifteen cents."

" The first money that a member pays into this council shall be credited on account of fines, funeral assessments, etc., he may owe, before any shall be credited for weekly dues."

The court below found as its eleventh finding of fact, " that the funds of said council are a sick and funeral benefit fund, accumulated by voluntary contribution of the members thereof, and to which only members of said council have contributed, or can contribute, and of which only members, or their designated beneficiaries, are or can be beneficiaries, and are held by trustees elected by the contributors to it, and administered, since October 2, 1900, to the present time, by such trustees and their successors in office, according to the will and

wish of the contributors and creators, for the purposes for which said funds were intended, and for the beneficiaries intended. And that said fund has not been held, used or employed or controlled by any person or body of persons except the defendant council. And said fund is, under the laws of the said order, left to the control and discretionary management and disposition of said defendant council."

The by-laws further provided that the funds of the council should be deposited in bank in the names of three trustees. This was done in the case of the fund in question. The court below further found as a fact that, after the notice of revocation on January 6, 1903, and before the decision of the Philadelphia court, May 10, 1904, " the defendants, acting in good faith and believing that Woods and his associates were the legal officers of the state council, and that its relations with the national council had been dissolved by the resolution passed at the Lancaster meeting, operated under its charter until it was decided by the common pleas court of Philadelphia county that the resolution was void, and Woods and his associates were not officers, and paid out the trust fund in dispute, $2,037.18, to the persons and for the purposes for which it was contributed; and, although the charter was revoked on January 6, 1903, the plaintiff made no protest or claim for the fund until almost two years thereafter."

The claim of plaintiff is based on the following provisions in the charter of Duquesne council: " And should the said Duquesne Council, No. 110, be dissolved by forfeiture or otherwise, then all books, papers, etc., the property of said council, shall become the property of the state council of Pennsylvania." And on the following section from the laws of the national council: " In the event of the disbanding of a council, the national or state council having jurisdiction shall collect its charter, private work, books and other property, which shall become, subject to a reorganization, the property of the national or a state council, as the case may be."

It will be observed that no specific reference is made in these sections to any funds or money belonging to the subordinate council. The language would seem to apply only to such physical properties as the charter, books, lodge room accessories and paraphernalia appropriate to the use of the council as a sub-

ordinate body of the order. It can hardly be gathered from these provisions that it was the intention to take away funds contributed by the members of the local council for the benefit of their own members only, or to divert a sick and funeral benefit fund from the beneficiaries for whom it had been created and held in trust.

Appellants also laid claim to the fund in question under the Act of June 20, 1883, P. L. 132, requiring that upon the dissolution or expulsion of subordinate organizations such as this, the moneys, property and effects shall be delivered to the parent body, to be held for the same purposes and intents for which they were received by the subordinate association.

The conclusions of law reached by the court below were as follows :

" 1. The taxes levied by the national and state council of the Junior Order United American Mechanics of North America, which the defendants' council refused to pay, were legally levied, and the charter of Duquesne Council, No. 110, was legally revoked.

" 2. Although the trust fund was paid to persons who were not at the time of payment members of the plaintiff's order, yet under the facts of the case the payments should be approved by a court of equity.

" 3. As it does not appear that the trust fund, nor any part thereof, was paid to or received by the defendants, the plaintiff is not entitled to relief, and the bill must be dismissed at its costs."

Upon the facts as found by the court below, we think its conclusions of law are sound. It does not appear that the state council had any plan or arrangement for the collection or payment of any sick or funeral benefits. All the beneficial features of that nature were left to the care of the local councils. This fund in question was made up entirely from the voluntary contributions of the members of the local council, placed in the hands of its trustees, to be disbursed by them for the benefit of the sick and the families of the dead of its members. With the control and administration of this fund the state council does not seem to have had anything to do. The authorities amply sustain the contention that funds raised by the members of subordinate bodies of this character, for sick and

funeral benefits, belong to the subordinate association, and are to be distributed by them to the parties for whose use and benefit they were contributed. It is held that the revocation of the charter of a subordinate body by the supreme body cannot have the effect of confiscating the property owned absolutely by the local body.

The principle is thus stated in Niblack on Benefit Societies, sec. 129, p. 255 : " The terms of the laws of the supreme lodge or council of a society, providing that on suspension of one of the local organizations its property shall be forfeited and vest in the secretary of the supreme body, are void, in that they seek to confiscate without judicial process property held and owned absolutely by the local organization," citing Wicks v. Monihan, 130 N. Y. 232 ; Wells v. Monihan, 129 N. Y. 161 ; Austin v. Searing, 16 N. Y. 112.

" Whatever powers the higher lodges in such an organization as this may have to make rules or laws for the government of the subordinate lodges and the discipline of their members, we think it quite certain that the courts can never recognize as valid any rule or law so made, the effect of which is to confiscate property, or arbitrarily to take away property rights from one set of members and give them to another set; nor will the courts allow or recognize the enforcement of any such rule when its enforcement will accomplish, and is designed to accomplish, such a result :" Goodman v. Jedidjah Lodge, 67 Md. 117 (127).

Another text-writer thus sums up the prevailing view of the courts as to this matter : " In regard to the jurisdiction of superior over inferior bodies in an order or society, the courts will not enforce a forfeiture of the property rights of the latter, but may even interfere to prevent it. In such cases considerations of public policy will always prevail. In mere matters of discipline, where no property right is involved, the decisions of the superior organization, if regularly rendered and not intentionally unjust, will be regarded as final. . . . Forfeiture of the conventional charter of a society incorporated by the state will not divest its property, nor can the property be affected by a secession of part of its members. Even if unincorporated, the majority of a society have generally the right to cut loose from a superior governing body,

and the minority have no redress if the property is used for the general purpose for which it was acquired : " 1 Bacon on Benefit Societies (1904), sec. 116.

Does the Act of June 20, 1883, P. L. 132, change in any way the application of this principle in Pennsylvania ? We think not. It does not attempt to divest any property rights, and if it did it would be unconstitutional. When properly construed, we think it is intended to provide for the disposal of such property as belonged to the subordinate lodge as a whole and which in case of dissolution of the association, would belong to no one, as it was held in common by the membership of the local body, while in existence. We see no indication that it was intended to reach a special trust fund, contributed for a special local purpose, and for the benefit only of the sick, and the families of deceased members of the local council. But be that as it may, and without expressly deciding that point, it is clear that the act does expressly provide that whatever property is transferred, shall be taken and held upon the same trusts, and for the same purpose and intents for which it was received and held by the subordinate association, so that in any event it would in this case have to be held for the purpose for which created.

It must further be noted that the statute provides that where the money has been improperly paid out by the subordinate society, it may be recovered from those who receive it. As the learned trial judge says, there is neither averment nor proof that any part of the fund was paid to any of these defendants, so the bill was properly dismissed for that reason. The action of the court below is also vindicated by another reason suggested in the opinion. That is, the fund has already been distributed to the parties for whom it was contributed, and who would ultimately be entitled to it. They cannot be paid a second time, and therefore to allow a recovery here, would be to divert the fund from the purposes of the trust, and this would not only be in violation of the terms of the act of 1883, but of the constitutional provisions as to property rights. The fund was created in good faith at a time when the subordinate council was in good standing, to be paid out as sick and funeral benefits to its own members ; and as a fact it was paid out in good faith to the persons, and for the pur-

poses for which it was contributed, prior to the decision of the court which determined that it was in allegiance to the wrong faction. It will not do to say that such payment was void. We agree with the court below, that under the facts of the case the payments so made should be approved by a court of equity. To hold otherwise would be to say that equity should do an inequitable thing.

The assignments of error are overruled, the decree of the court below is affirmed, and this appeal is dismissed at the cost of the appellant. .

ELKIN, J., dissents.