[Civ. No. 5690. First Appellate District, Division Two.—July 10, 1928.]

ROBERT C. SCOTT et al., Appellants, v. J. J. DONAHUE et al., Defendants; J. S. WRINKLE, Intervener and Respondent.

George D. Collins, Jr., for Appellants.

Gillogley, Crofton & Payne for Respondent.

NOURSE, J.—Plaintiff, on behalf of himself and some two hundred associates, sued in replevin to recover four Liberty bonds, the property of the members of the San Francisco Lodge Number 198 of the Brotherhood of Railroad Trainmen, prior to its dissolution. By order of court the parent organization of the Brotherhood of Railroad Trainmen was substituted as a party defendant for defendant Donahue, who was sued as treasurer of the local lodge, and thereafter one Sully, purporting to represent the parent body, filed an answer and cross-complaint, and one Wrinkle, representing a minority of 48 of the members of Local 198, filed a complaint in intervention. Before the trial the bonds were deposited in court and the treasurer and the bank were discharged from liability. Though the action was commenced as a simple suit in replevin, it was in fact tried upon the complaint in intervention, which transformed the proceeding into one of equity to establish a trust fund. The cause was tried before the court, sitting without a jury, and resulted in a finding that the bonds constituted a trust fund for the benefit of the members in good standing of the Brotherhood who were formerly members of Local 198. This was followed by a judgment that the intervener was entitled to have the bonds as trust property for himself and such former members of the local. From this judgment the plaintiff has appealed on a typewritten record.

In the year 1920 Local 198 consisted of about 284 members. At this time dissension arose because of action taken by the local in opposition to the policy of the grand lodge relative to participation in a strike against employing railway concerns. Disobedience of the orders of the grand lodge by the local resulted in a revocation of the local charter pursuant to the rules and regulation of the parent

body. The original complaint was filed by appellant on behalf of a large majority of the members, while the complaint in intervention was filed on behalf of those minority members who supported the action of the grand lodge and who later associated with Local Number 947, a new local organized under the sanction of the grand lodge.

There are certain rules of law which are determinative of the controversy aside from any of the arguments advanced in the respective briefs. "Associations of this character are not bodies politic or corporations, nor are they recognized by the law as persons. They are mere aggregates of individuals called for convenience, like partnerships, by a common name. . . . All the property said to belong to it is in fact the property of its members and each man's share of it is his own private property and equally protected by the fundamental laws." (*Grand Grove, etc.,* v. *Garibaldi Grove,* 130 Cal. 116, 119 [80 Am. St. Rep. 80, 62 Pac. 486].) When funds have been acquired by the association for the mutual benefit of its members, as to care for the individuals in case of sickness, such funds constitute a trust in favor of every member of the association in good standing, and, in absence of special agreement, the parent body cannot successfully lay claim to the funds upon an involuntary dissolution of the local association. (*State Council* v. *Emery,* 219 Pa. 461 [12 Ann. Cas. 870, 15 L. R. A. (N. S.) 336, 68 Atl. 1023]; *Detroit Sav. Bank* v. *Haines,* 128 Mich. 38 [87 N. W. 66]; *I. O. O. F.* v. *Donahue,* 81 Ill. App. 585.)

The rule rests upon the sound base that property may not be taken without due process of law. Accordingly, it has been held that where the parent body seeks to dissolve a subordinate lodge by its mere fiat and to confiscate the property of the latter its action will not be upheld in the courts. (*Austin* v. *Searing,* 16 N. Y. 112 [69 Am. Dec. 665]; *Wicks* v. *Minihan,* 130 N. Y. 232 [14 L. R. A. 243, 29 N. E. 139]; *State Council, etc.,* v. *Emery, supra; Merrill Lodge, etc.,* v. *Ellsworth,* 78 Cal. 166 [2 L. R. A. 841, 20 Pac. 399, 400].) Some of the early decisions held that a provision in a local charter or in the by-laws of the supreme body making the supreme body entitled to the funds of the local lodge on dissolution of the latter was confiscatory and void as taking property without due process. The later

decisions have recognized the local charter as a contract between the lodge and the supreme body (of which the by-laws of the latter become a part) (*Grand Grove, etc.,* v. *Garibaldi Grove, etc.,* 105 Cal. 219, 224 [38 Pac. 947], and where, by either charter or by-law, adequate provision is made for notice and hearing before the local lodge is dissolved and its property forfeited, the funds are then deemed to have been raised in accordance with the contract between the parties, and the forfeiture is a forfeiture by contract and not without due process. (*Subsidiary High Ct. A. O. F.* v. *Pestarino,* 41 Cal. App. 712, 714 [183 Pac. 297]; 7 Cor. Jur., p. 114.) Where the power to thus forfeit the property of a local lodge is given by charter or by-law the forfeiture can be effected only "for cause" and this "implies the existence of the fact of good and reasonable cause," which can be determined only after the lodge has been given due notice and a reasonable opportunity to be heard. (*Bannerman* v. *Boyle,* 160 Cal. 197, 206 [116 Pac. 732]; *Taboada* v. *Sociedad Espanola, etc.,* 191 Cal. 187, 191 [27 A. L. R. 1508, 215 Pac. 673]; *Ku Klux Klan* v. *Francis,* 79 Cal. App. 383, 386 [249 Pac. 539]; *State Council, etc.,* v. *Emery,* 219 Pa. 461 [12 Ann. Cas. 870, 15 L. R. A. (N. S.) 336, 68 Atl. 1023].)

■■■ As applied to the forfeiture of the funds of a local lodge the language of *Grand Grove, etc.,* v. *Garibaldi Grove, etc.,* 105 Cal. 224, 225 [38 Pac. 947, 948], is pertinent: "Whoever would claim the right to deprive another of property or privilege, without giving him an opportunity to defend the same, must show some consent on his part to such action." Here the several pleadings of the parties assume that Local Lodge 198 was *duly* dissolved, it seeming to be the desire of all parties to treat their fraternal relations as effectively severed. The assumption of due process, is a violent one in view of the fact that the charter was revoked by order of the vice-president of the supreme lodge after a one-day notice to the officers of the local to appear before him and show cause why their charter should not be suspended or revoked "for failure to conform to the constitution and general rules" of the Brotherhood. All parties, however, concede that it was not a voluntary dissolution, although a large majority of the members of the local desired to discontinue their affiliation with the parent lodge.

In determining the rights of the parties to the funds in litigation we must, therefore, assume that the vice-president of the supreme lodge attempted to revoke the local charter for misconduct on the part of the members and that, so far as this proceeding is concerned, his action was in accord with the constitution and by-laws of the Brotherhood.

■ In view of the well-established rule of law to which we have adverted—that the "contract" between the supreme order and the local lodge must authorize the forfeiture of the funds of the subordinate body—the burden of proof was upon respondent to show such authority. He relies solely on section 43 of the constitution of the Brotherhood, which reads in part: "A lodge whose charter has been *voluntarily* surrendered, or reclaimed by the President of the Grand Lodge, shall be known as a defunct lodge. The President of a defunct lodge shall deliver to the grand lodge, within thirty days after the dissolution of the lodge, the charter, seal, rituals, unwritten work, and all other supplies furnished by the Grand Lodge, and all effects of the lodge at the time of dissolution."

■ In view of the well-known principle that forfeitures are not favored and that, when the right for forfeiture is claimed under contract, the condition involving the forfeiture must be strictly interpreted against the party for whose benefit it is created (Civ. Code, sec. 1442), we are unable to find any justification for the claim that this fund, which was created as a sick benefit fund for the members of Local 198, became the property of the grand lodge upon the revocation of the local charter. The section of the constitution quoted follows immediately the section which covers the whole subject of the suspension and revocation of a local charter for misconduct, yet in section 43 no mention is made of either suspension or revocation. This section applies only to a case of *voluntary* surrender of a charter and to a charter "reclaimed" by the president of the grand lodge. It specifies the lodge properties and regalia which must be turned over to the grand lodge, but does not mention the moneys belonging to the lodge as a lodge or the funds held by the lodge in trust for its members. We conclude, therefore, that the inherent right of every member of the lodge to the fund in dispute was not changed by any contract between the grand lodge and the local. The case is parallel

to *State Council* v. *Emery, supra*, where similar language in the constitution of the grand lodge was held not to confer upon the grand lodge the right to a sick benefit fund of a local lodge upon dissolution of the latter. To the same effect is *Detroit Sav. Bank* v. *Haines, supra; Independent Order of Foresters* v. *Donahue*, 91 Ill. App. 585; *National Circle, etc.*, v. *Hines*, 88 Conn. 676 [92 Atl. 401]; *Wolfe* v. *L. C. O. of I. A.*, 233 Pa. 357 [82 Atl. 499].

Respondents rely upon the rule that those who remain faithful to the parent organization are entitled to all the property of the local lodge on dissolution of the latter, citing *Watson* v. *Jones*, 13 Wall. (U. S.) 679 [20 L. Ed. 666]; *Nance* v. *Busby*, 91 Tenn. 303 [15 L. R. A. 801, 18 S. W. 874]; *Grand Court, etc.*, v. *Hodel*, 74 Wash. 314 [47 L. R. A. (N. S.) 927, 133 Pac. 438]; and other cases. The rule, as stated, is too general, but, even so, it has no application here. Where funds have been raised by a local lodge, or order, for the general purposes of the parent organization, such as the teaching of the religion or creed of the general body, they constitute a trust fund for the purpose for which they were raised and ''no number of the members of the order less than the whole could therefore divert the funds to other uses than the uses defined in the constitution and laws of the order.'' (*Grand Court, etc.*, v. *Hodel, supra.*) The rule is based upon the sound principle that a trust fund must be devoted to the purposes for which it was raised. It has no application to a sick benefit fund raised for the benefit of all the members of the local lodge and to which all who are in good standing at the time of an involuntary dissolution of the local are entitled to their proportionate share. Thus, the judgment herein is error in its finding that these funds constituted a trust fund for the benefit of the minority members of Local 198 who affiliated with Local 947. The fund was raised for the benefit of all members—it was a trust for all and not for any particular number of them less than all.

The trial court found that all the allegations of the complaint were true except the allegation that the action was brought on behalf of plaintiff and *all* the members formerly belonging to Lodge 198 *and at their request*. It also found that the allegations of the complaint in intervention of Wrinkle on behalf of other members of the local named

therein were true. There is no need for a new trial of any of the issues involved, but the trial court should appoint a suitable person to take possession of and sell the bonds in suit and to distribute the proceeds equally among all the former members of Local 198 who were in good standing upon the rolls at the time of its dissolution, after deducting therefrom the costs of suit and other charges and fees properly chargeable against the trust fund.

Judgment reversed, with directions to proceed as herein indicated.

Koford, P. J., and Sturtevant, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 6, 1928.

All the Justices concurred.