Allen, J.
 

 The certificate upon which the action was instituted was in full force and effect upon the date' of the death of the assured, unless the manner of his death exempted the order from liability. We are hence required to consider the character of the insurance contract.
 

 The pertinent language of the application signed by McKinney on November 14, 1901, and received at the office of the supreme council December 17, 1901, reads as follows:
 

 “I hereby agree with the said order that I have read and will comply' with the requirements of its articles of incorporation, constitution and by-laws, which, with this statement, shall be the basis of membership between myself and the said order.
 
 * * *
 

 I also agree that any mis-statement or concealment of any fact shall cause a forfeiture of my membership in said order, and shall also cause, as to myself, and my beneficiary or beneficiaries, a forfeiture of all rights to indemnity, and to the recovery of anything whatsoever on account of any certificate, which may be issued to me by said order. I also agree that the said order shall not be liable to me, or my beneficiary or beneficiaries, in any manner under any certificate of membership which may be issued to me, except for bodily injuries sustained through external, violent and accidental means, and except as provided in the constitution and by-laws.”
 

 The certificate thereupon was issued by the order,
 
 *141
 
 and stated in its material portions that McKinney “js entitled to all of the rights and privileges of membership accruing' to him under the constitution and he is hereby recommended to the fraternal courtesy of the brotherhood wheresoever dispersed.” Neither the application nor the certificate made any reservation as to the future enactment of by-laws or amendments to the constitution. The assured did not agree in the application to be bound by after-enacted regulations, nor was the certificate based upon any such agreement.
 

 At the time the certificate was issued to the assured the constitution of the order provided as follows :
 

 “If any member of the order who has paid when due all fees, dues, and assessments, shall sustain, during the continuance of his membership, and while in good standing, bodily injury 'effected through external, violent and accidental means, which alone shall occasion death immediately, or within one year from the happening thereof, the supreme council by and through its officers within ninety days from the receipt of satisfactory proof of his death, shall pay to the person, or persons entitled thereto a sum equal to two dollars for each member in good standing in the order at the time such death occurs * * #.”
 

 Section 2 of Article IY of the constitution defined membership in good standing as follows:
 

 “All members shall be considered in good standing so long as they pay all fees, dues and assessments, and faithfully observe the laws, rules, commands and regulations that are now in force, or that may be added to this constitution, by-laws and rules,
 
 *142
 
 and assist in the support of the principles of the order.”
 

 A stipulation entered into by counsel for the respective parties reads:
 

 “It is hereby stipulated and agreed by and between counsel for the above respective parties that:
 

 “First: The defendant, The Order of United Commercial Travelers of America, is and was in 1901 a fraternal beneficiary association.
 

 “Second: That the death of Francis W. McKinney resulted from asphyxiation caused by gas poisoning or carbon monoxide poisoning and his death was caused by accidental means.
 

 ‘ ‘ Third: That in the constitution in force in 1901 at the time Francis W. McKinney made application for insurance and membership and at the time his certificate of insurance was issued .there was no exemption clause which would preclude recovery for accidental death caused or brought about by asphyxiation, gas poisoning or carbon monoxide poisoning.”
 

 It is also conceded that all dues and assessments had been paid by McKinney up to the time of his decease, and the record contains no evidence of a failure on his part to observe any of the laws, rules, commands, and regulations of the order, unless the manner of death constituted such failure.
 

 Amendments of the constitution enacted in 1910, 1914 and 1927 exempted the order from liability for death resulting from asphyxiation. Hence under the amended constitution, the particular form of death suffered by the assured upon November 25, 1927, was not covered. It was, however, covered by the language of the constitution in force at the time the certificate was issued.
 

 
 *143
 
 The Court of Appeals stated in its opinion that it was compelled to affirm the judgment of the trial court upon authority of
 
 McGovern
 
 v.
 
 Brotherhood of Locomotive Firemen & Enginemen,
 
 85 Ohio St., 460, 98 N. E., 1128, and
 
 Tisch
 
 v.
 
 Protected Home Circle,
 
 72 Ohio St., 233, 74 N. E., 188. However, in each of those cases there is a sharp distinction from the instant record upon the facts. The Tisch record shows that the decedent in her application specifically agreed to he hound by the “laws, rules, and usages of the order now in force or which may hereafter be adopted.” McGovern also in his application for a beneficiary certificate agreed to be bound by “by-laws that may be hereafter enacted.” McKinney’s application, on the contrary, contained no such agreement. Hence the insurance contract was based upon the by-laws and constitution in existence at the time of the application.
 

 The question confronting us, therefore, is whether the subsequent amendments of the constitution, which materially alter the obligation of the insurance contract previously consummated, exempt the order from liability.
 

 Section 9469, General Code, is cited by counsel for the order, who claim that under this section all changes, additions, or amendments to the charter and articles of incorporation bound and controlled McKinney as if in force at the time of the application. However, this statute, originally enacted in 1904 (97 Ohio Laws, 422, Section 8), must not be construed as retroactive. It is a statute affecting substantial rights, and hence cannot apply to a contract .of insurance entered into in 1901. Moreover, since the certificate did not, as provided by that sec
 
 *144
 
 tion, specify the amount of benefits provided and recite that the charter, constitution, and laws of the order, together with the application, constituted the agreement, it may well be questioned whether the subsequent part of the section controls this controversy.
 

 It is strenuously urged by counsel for the order that McKinney’s beneficiary cannot recover because McKinney did agree in his application to comply with the requirements of the articles of incorporation, constitution, and by-laws, and that under the constitution he was not in good standing unless Jhn faithfully observed the laws, rules, commands and regulations that were then in force and that might later be added to the constitution under the specific rules of the order. The theory is advanced that “observe” means “to be bound by the consequences,” and that hence McKinney did specifically agree to be bound by the consequences of later enacted amendments, even though they should radically affect his insurance contract.
 
 The Order of United Commercial Travelers
 
 v. Smith, (C. C. A.), 192 F., 102, is cited in support of this contention. The decisions are in conflict upon the question, but the point urged seems to the majority of the court to require a strained construction of the agreement to faithfully observe laws, rules, commands and regulations of the order. No act is pointed to as constituting a violation of such laws, rules, commands, and regulations, unless it be the act of dying. But this was an accidental death, sharply differentiated from the self-inflicted death in the case of
 
 Tisch
 
 v.
 
 Protected Home Circle, supra.
 
 We think that the term requiring faithful observance of the
 
 *145
 
 rules of the order relates to the conduct of the assured during his lifetime, as a member of the order, such as payment of fees, dues and assessments, and personal conduct in accordance with the rules of the order, and that it can not be warped into a requirement that the decedent shall be accidentally killed in any certain way.
 
 Coghlan, Exr.,
 
 v.
 
 Supreme Conclave Improved Order Heptasophs,
 
 86 N. J. Law, 41, 91 A., 132.
 

 Since McKinney, therefore, conformed to all rules of the order under a contract which did not exempt the order from liability for death by monoxide poisoning, the trial court was in error in directing a verdict. While the cases are in conflict, there is ample authority in favor of this position. The general. rule is stated as follows in 2 Cooley’s Briefs on Insurance, 1170,1181:
 

 “Whatever interpretation may be put on the decisions in the cases cited as supporting the general principle that the association may bind its members by subsequently enacted laws, it must be regarded as well established by the weight of authority that even by a reservation of the right to amend or alter its laws, or an agreement by the member to be bound by laws thereafter enacted, an association cannot by such amendment or alteration impair the obligation of its contracts or deprive a member of his vested rights.
 
 * * *
 

 “From an examination of the cases in which the effect on pre-existing contracts of mutual benefit associations of amendments and alterations in the laws of the association has been in issue, the following rules may be deduced: In view of the general power of a mutual benefit association to enact laws for its
 
 *146
 
 own government, the members are generally bound by amendments or alterations of the laws made in accordance with the fundamental laws of the association and to which they have assented, so long as they relate only to the business methods of the association and the general duties of the members. Under the reservation of power to amend or alter the laws, or an agreement by the member to comply with laws thereafter enacted, the association may, for the good of the order, adopt laws which affect the contract, so long as they are reasonable and in harmony with the general purpose and policy of the association; but the association cannot bind the member by laws which materially alter or diminish the value of his contract, or impair his vested rights.”
 

 To the same effect are 45 Corpus Juris, 38;
 
 Sovereign Camp Woodmen of the World
 
 v.
 
 O’Neill,
 
 86 Okl., 16, 205 P., 755;
 
 Woodmen of the World
 
 v.
 
 Alford,
 
 206 Ala., 18, 89 So., 528;
 
 Eminent Household of Columbian Woodmen
 
 v.
 
 Eppes,
 
 24 Ga. App., 762, 102 S. E., 174;
 
 Schulz
 
 v.
 
 Supreme Tent, Knights of Maccabees,
 
 (Mo. App.), 236 S. W., 903;
 
 Wilson
 
 v.
 
 Supreme Conclave Improved Order of Heptasophs,
 
 174 N. C., 628, 94 S. E., 443;
 
 Roblin
 
 v.
 
 Supreme Tent of the Knights of Maccabees,
 
 269 Pa., 139, 112 A., 70;
 
 Sweetwater Progressive Mutual Life & Accident Assn.
 
 v.
 
 Allison,
 
 (Tex. Civ. App.), 22 S. W. (2d), 1107. In the case of
 
 Sweet
 
 v.
 
 Modern Woodmen of America,
 
 169 Wis., 462, 172 N. W., 143, it was held that the insured was not bound by a by-law subsequently adopted even though he had agreed that laws thereafter enacted by the association should become a part of the contract. To the same effect are
 
 Wist
 
 v.
 
 Grand Lodge A. O. U. W.,
 
 22 Or., 271, 29 P., 610, 29 Am. St. Rep., 603, and
 
 Sieverts
 
 v.
 
 Na
 
 
 *147
 

 tional Benev. Assn. of Minneapolis,
 
 95 Iowa, 710, 64 N. W., 671. As pointed ont before, however, it is not necessary to go to snch a length in this decision, for here the record contains no such agreement.
 

 Upon the other questions raised we sustain the contention of the defendant in error. Section 9469, General Code, under which printed copies of the constitution were admitted in evidence, is a statute changing a rule of evidence, and hence, although enacted subsequently to the making of this insurance contract, is applicable here. The record does not show that the trial court committed reversible error in rejecting the testimony, offered by the plaintiff, of an official from the office of the state superintendent of insurance, because of insufficient profert as to what the answer would have been if the witness had been permitted to testify. It was not prejudicial error upon the part of the trial court to refuse to admit a certified copy of the death certificate from the bureau of vital statistics of the state of Maryland, because of the fact that the defendant did not controvert the allegation in the petition that McKinney’s death resulted from accidental asphyxiation, and in fact the stipulation conceded this allegation.
 

 Since, however, the judgment of the trial court was based upon the fact that the insurance contract did not cover the accident, the trial court erred in directing the verdict, and the Court of Appeals erred in affirming that judgment. The judgment of the Court of Appeals will be reversed, and the case remanded for further proceedings according to law.
 

 Judgment reversed and cause remanded.
 

 Marshall, C. J., Day and Robinson, JJ., concur.