170 So. 223

**ITALIAN SOCIETY OF MUTUAL BENEFICENCE v. VACARELLA et al.**

6 Div. 25.

Court of Appeals of Alabama.

June 9, 1936.

Rehearing Denied June 30, 1936.

234

J. Reese Murray and Ernest Matthews, both of Birmingham, for appellant.

James L. Permutt and A. Berkowitz, both of Birmingham, for appellees.

SAMFORD, Judge.

In the year 1904 a charter was issued by the state of Alabama under the general law incorporating the Italian Society of Mutual Beneficence, Umberto Di Savoia Principe Di Piemonte.

The avowed aim of said society, after a listing of the names of several notable Italians, is stated to be: "Thankful of many glories and the mission to which Italy is called on to fulfill in the modern world, the Italians of Birmingham have formed an association, incorporated in accordance with the laws of their adopted country, under the historical name: Umberto Di Savoia Principe Di Piemonte, for the scope of Mutual Beneficence and general education, where it can maintain alive and dear the sentiments of Religion and Country, adopting the following By-Laws and Regulations."

Among said by-laws is to be found section A providing for a monthly due of $1 in advance, a mortuary fee of $1.50, and other fees not necessary here to men-

tion, also article 30 of the by-laws, which provides that all the articles of the by-laws can be annulled or amended as therein provided.

In November, 1906, Santo Vacarella became a member of said society, and twenty years thereafter received from said society, duly signed, a certificate of life membership, entitling him to certain benefits hereinafter to be adverted to in connection with the by-laws of the society subsequently adopted.

Subsequent to the incorporation, and while plaintiff's intestate was a member in good standing and during, to wit, the year 1917, the by-laws of the society were amended so as to provide: "Section G: At the death of a member his legal heirs shall be entitled to the following benefits: (a) $1.50 for every member on the roster of the Society. (b) $100.00 as a contribution, which shall be appropriated from the fund of the Society, for funeral expenses. (c) The President or any acting for him shall send and have placed on the casket of the defunct member, a wreath of flowers to the value of $10.00, the expense of which shall be absorbed by the Society." Also the by-laws were amended by the addition of "Section L. Any member who should die shall have right to burial in the cemetery of the Society," etc.

At the same time there was adopted as a part of the by-laws "Article 8. A member who has belonged to the Society twenty years uninterruptedly, and who, at the expiration of this period, is in good standing with the Society, shall be, from this date on, exempted from payment of the monthly dues during the rest of his life," and also "Section B. If a member, as a result of an illness or disability, should become absolutely disabled to gain a livelihood, he shall be entitled to a monthly benefit, for life, of $15.00 per month, and shall also be exempted from paying all dues."

In 1920 or 1921, and while these by-laws were in full force and effect, plaintiff's intestate, Santo Vacarella, became totally blind, and thereby was rendered totally disabled to gain a livelihood. This disability and the obligations resting upon the society were recognized, and plaintiff's intestate was paid by the society the $15 per month disability benefit until some time in 1933, when, by regular proposals and in regular meeting, the by-laws of the society were amended, abolishing the $15 a month disability benefit, and also requiring members holding life certificates, for having completed a 20-year continuous term of membership, to pay dues and fees just as other members of the society were required to do, and providing: ."The said member, however, is accorded a special privilege, in the sense that he does not lose his rights to death benefits, provided he does not owe a debt debited to his account over a period of twelve months. In such case, in the event of death, he shall receive only funeral accompaniment, a grave in the Social Cemetery and a wreath of flowers customarily given to defunct members."

It is admitted that plaintiff's intestate, according to the last amended by-laws, was indebted to the society for dues and assessments for more than 12 months, and, if said amendments are valid and binding upon plaintiff's intestate, then, having received the wreath and the permit of burial, he is entitled to nothing. If, however, the society was not authorized or empowered under the law to change the by-laws affecting its obligations to plaintiff's intestate, then the plaintiffs here, as the heirs of Santo Vacarella, would be entitled to recover the $100 from the general fund of the society and $1.50 for every member on the roster of the society at the time of his death. Plaintiff's intestate died in November, 1935, of which fact the defendant has had notice.

Whatever may have been the original purpose of the society, its charter was broad enough to authorize the amendments adopted in 1917, creating certain obligations therein named on the part of defendant and in favor of each individual member of the society, and it is equally clear that these amendments were adopted by the society in accordance with its charter and by-laws. Therefore it is equally evident that, unless the by-laws adopted in 1917 have been changed in such manner as to preclude a recovery on the part of plaintiff's intestate, the obligations would continue as to him whatever may be the result with reference to other members of the society differently situated.

In other words, a voluntary mutual beneficial society, such as the defendant is, would have a right to change or amend its by-laws relating to the conduct and management of the affairs of the society at any time it saw fit, subject, however,

to the vested rights which had been acquired by the individual member prior to the change, and a continuation and participation in the conduct of the society subsequent to such amendment or change would be binding upon all members remaining therein.

■ Whatever may have been the mutual obligations of the parties prior to the amendment of the constitution and by-laws in 1917 is of no moment in a consideration of this case. The contract with which we are concerned is the contract made between the members of the organization and the defendant after the amendment of 1917, whereby the society obligated itself to pay to the members upon the happening of certain things a definite financial benefit, and also upon the continuous membership of 20 years to grant a life membership in the order. The organization and membership was voluntary after this amendment. Any member might have dropped out and discontinued his connection, but continuing the connection and the payment of dues incident thereto was a ratification of the amendment which thereby became the contract between the parties, and, upon a compliance by the member with the terms of the contract, he became vested with certain rights thereunder which might not be changed without his consent, that is, having become a life member under the terms of the by-laws, he continued as such, and, after the happening of that event, the society would not have the power to enact a retrospective by-law which would deprive him of that right. Likewise, having become totally disabled by blindness within the period covered by the by-laws, the society would have no right by a subsequent by-law to divest him of the financial benefit to which he was entitled.

It is quite clearly stated to be the law that a voluntary association may amend its by-laws in any way it sees fit so long as they are designed solely for the government of its internal affairs and do not involve the contractual or property rights of a member. The foregoing is taken from the text in 19 Ruling Case Law, p. 1204, par. 21, and supported by a long list of citations under note 16.

■ It is equally clear that attempted changes in the by-laws which are manifestly unfair are generally considered unreasonable and void, even though the power of amendment has been expressly reserved.

Bearing in mind that the contract which we have under consideration in this case originated and became fixed in 1917, it is perfectly obvious that the society could not, by enacting a by-law in 1932 after its liability had become fixed as to plaintiff's intestate, destroy the plan of insurance as then created and substitute some other essentially different plan to the detriment of the members of the society whose contracts had been determined by the happening of the events named in the by-laws. 19 R.C.L. p. 1205, par. 22.

There seems to be some confusion in the decisions arising out of contracts of insurance growing out of the relationship between members of a mutual benefit society and the society itself, but we are led to agree with the statement of the rule as laid down in 45 Corpus Juris, p. 51, 52 (41), that by the weight of authority a subsequent by-law reducing benefits without the consent of the member is invalid as impairing rights vested under the contract, even though the certificate is taken subject generally to existing and future laws, provided the original contract is valid.

There is some diversity of opinion in the decisions as to the power of mutual associations to change the amount of sick benefit during the time a member is sick, but we have no such case here. The instant case presents a case of total disability determinable upon the happening of the event and recognized by the society for a number of years before an effort was made to relieve itself of the obligation by an amendment to its by-laws.

The law will not permit an amendment of by-laws of a mutual society which so completely deprives a member of his rights which amounts to an absolute repudiation of the society's obligation, even under general provision set out in the original by-laws binding a member to all future changes in the by-laws of the society. Wist v. Grand Lodge, 22 Or. 271, 29 P. 610, 29 Am.St.Rep. 603; Smith v. Supreme Lodge, K. of P., 83 Mo.App. 512; Fugure v. Mutual Society, 46 Vt. 362; McKinney v. Order of United Commercial Travelers of America, 124 Ohio St. 139, 177 N.E. 206, 209.

From an examination of the cases in which the effect on pre-existing contracts of mutual benefit associations of amend-

ments and alterations in the laws of the association has been in issue, the Ohio court in McKinney v. Order of U. C. T., supra, has this to say: "In view of the general power of a mutual benefit association to enact laws for its own government, the members are generally bound by amendments or alterations of the laws made in accordance with the fundamental laws of the association and to which they have assented, so long as they relate only to the business methods of the association and the general duties of the members. Under the reservation of power to amend or alter the laws, or an agreement by the member to comply with laws thereafter enacted, the association may, for the good of the order, adopt laws which affect the contract, so long as they are reasonable and in harmony with the general purpose and policy of the association; but the association cannot bind the member by laws which materially alter or diminish the value of his contract, or impair his vested rights." To the same effect are 45 Corpus Juris, 38; Woodmen of the World v. Alford, 206 Ala. 18, 89 So. 528; Eminent Household of Columbian Woodmen v. Eppes, 24 Ga..App. 762, 102 S.E. 174; and many other authorities listed in notes in Corpus Juris, p. 38 et seq.

It follows from the foregoing that this court is of the opinion that the rights of plaintiff's intestate became vested prior to the amendment of the by-laws in 1932 and 1933, and that such amendment did not in any manner affect the contract which had theretofore existed.

It is urged in argument of appellant's counsel that plaintiffs are estopped by reason of the fact that, after the amendment in 1917, plaintiff's intestate accepted the benefits of the amendment through a series of years. There is no element of estoppel in this. The new contract or changed contract became fixed upon the amendment of the by-laws, and, being a voluntary organization, plaintiff's intestate might have continued as he did, and with the inducement of the benefits to arise from the payment of his dues, or he might have withdrawn at will. After the obligations had attached and the liability had become fixed, plaintiff's intestate did not do anything to ratify the amendments of 1932 and 1933, nor did he do anything to place the defendant in a less advantageous position. Brown v. Alabama Great So. Railway Co., 219 Ala. 87, 121 So. 91;

McFry v. Stewart, 219 Ala. 216, 121 So. 517, 519.

It becomes unnecessary for us to pass upon the question as to whether or not plaintiff's intestate was indebted to the defendant for a period of 12 months in such manner as to authorize a suspension, for the reason that under the foregoing opinion he was entitled under the by-laws to a benefit of $15 per month, which was more than enough in any event to have offset the claim which the defendant had against him.

We find no error in this record, and the judgment is affirmed.

Affirmed.