GREAT COUNCIL OF OHIO OF THE IMPROVED ORDER OF RED MEN, APPELLEE, *v.* TYLER ET AL., APPELLANTS.

(No. 646—Decided March 26, 1966.)

*Mr. William M. Dixon,* for appellee.
*Messrs. Shipman & Utrecht,* for appellants.

CRAWFORD, J. Plaintiff, appellee herein, Great Council of Ohio of the Improved Order of Red Men, is seeking a money judgment against the defendants, former members of Amokee Tribe No. 132 of the order. Judgment was granted to the plaintiff against the defendants severally for the sum of $349.73 each, representing the amount distributed to each, and constituting the total funds of the tribe just before it became defunct.

There is no bill of exceptions. The case was tried by the court which rendered separate conclusions of fact and law. In addition to the facts already mentioned, the court found that

Amokee Tribe No. 132 was chartered in 1893, at which time the laws of the National Council provided:

" 'All regalia, costumes, seal, books and papers of the Order shall be surrendered to The Great Council of The United States on the extinction of a Great Council or Tribe under the jurisdiction of The Great Council of The United States.'

" 'The Great Sachem has the right to demand the property of an extinct Tribe, to be held in trust for the future use of the members of such Tribe.'

" 'The property of an extinct Tribe must be held in trust for the future use of its members.' "

The court also found that sometime later the Constitution and General Laws were changed; that in 1946 "these laws were codified and this is the first time the evidence indicates a change in the law"; that it was then provided that "All wampum or funds of a tribe are trust funds of the Order, created for the advancement and best interests thereof as a whole, and shall never be expended for any other object or purpose than the following *  * *"; and, after listing per capita taxes, sick and funeral benefits, operating expenses and other uses by the tribe, that:

" 'Upon a tribe becoming defunct, all property, effects and wampum in its possession or belonging to it, including real property, shall thereupon at once vest in and become the property of the Great Council having jurisdiction, and the same shall be delivered to the Great Incohonee or the Great Sachem upon demand, as the case may be.' "

According to the further findings of fact, the plaintiff's only requirement of a local tribe was that it pay a certain per capita tax, but it did not prescribe the amount of dues or contributions of the members; that through dues, voluntary contributions and gifts, Amokee Tribe acquired certain real estate which it sold in 1955 for the sum of $10,000. This sum, together with certain other funds, was distributed among the then-existing members, after which the tribe became defunct.

Upon initiation, the defendants had taken an oath to obey the laws and usages of the order "as they now exist or may be hereafter enacted," and the application for the charter bound the members to obey the laws of the order.

The court found:

"That the Constitution and General Laws of the plaintiff provide that all money of its tribes are a trust fund of the order, to be expended only for purposes stated in the Constitution and General Laws of the Great Council; and that the Constitution and General Laws do not authorize a tribe to sell its physical assets and divide the money among its members."

The court's conclusions of law were that each of the defendants, as a member of Amokee Tribe, is obligated to obey the Constitution and General Laws of the plaintiff, and all property and funds held by it were at all times trust funds of the order and subject to the Constitution and bylaws; that the division of the assets among the members was unlawful and contrary to the Constitution and bylaws of the order; that plaintiff is entitled to a several judgment against each defendant for the amount actually received by him, and that the fact that distribution was made prior to the tribe's becoming defunct will not relieve the defendants of this responsibility.

Defendants, appellants herein, argue that the assets distributed to them arose from voluntary contributions to the local lodge or the tribe treasury at a time when the Constitution of the National Lodge provided that the property of a local lodge must be held in trust for the future use of its members; and that the subsequent changes in the Constitution and bylaws of the National Lodge, endeavoring to divest local members of their beneficial interest in the funds which they have created for their own benefit, are ineffectual.

None of the cases cited in the briefs furnishes a conclusive answer to the question. Most of these cases are from other jurisdictions.

In *State Council, Jr. O. U. A. M. of Pa.*, v. *Emery* (1908), 219 Pa. 461, 68 A. 1023, 15 L. R. A. (N. S.) 336, 12 Ann. Cas. 870, a state council filed a bill in equity against fourteen members of a local lodge to require them to account for certain funds collected by the local lodge from its members for sick and funeral benefits for its members. The funds had already been paid out for such purposes in accordance with the constitution and bylaws of the local lodge. After its charter was revoked, the bill was filed. Relief was denied. It was held that neither the state nor local rules or laws supported the state council's bill.

In *Grand Court of Michigan, Foresters of America*, v. *Court*

*Germania No. 1* (1916), 192 Mich. 380, 158 N. W. 832, a suit in equity was instituted by the Grand Court of Michigan to recover funds of what had been a subordinate court. The latter had seceded because of amendments to the Constitution of the Supreme Court considered subversive of the local court's interest, and had affiliated with another association. The fund in question was raised entirely by the subordinate court through voluntary contributions by its members through initiation fees and dues to be used for sick and funeral benefits of the members. The revenue of the Grand Court was derived from a per capita tax. Relief was denied. It was held that the Grand Court had no interest in the fund.

The Michigan court in its opinion recognized a conflict in the authorities and that one view was represented by *State Council, Jr. O.U.A.M. of Pa.,* v. *Emery* (1908), 219 Pa. 461, 68 A. 1023, 15 L. R. A. (N. S.) 336, 12 Ann. Cas. 870, and the other by *Gross Loge der Harugari* v. *Brausch* (1912), 256 Ill. 185, 99 N. E. 908.

This latter case is relied upon by the present plaintiff. In it, the Grand Lodge filed bills of complaint for discovery and accounting against former officers of four subordinate lodges. The charter of each subordinate lodge provided that in the event of its transgression, its charter, papers and all belongings shall be forfeited to the Grand Lodge and all its property delivered to the Grand Lodge. According to the constitution of the United States Grand Lodge, upon termination of a charter, it is the duty of the officers or members of the subordinate lodge "to assign, transfer and deliver the charter, books, papers, property and funds of the lodge" to the person authorized by the Grand Lodge to receive them; and they are to be held for a period of three years or returned to the lodge if reinstated within that time, and, if not so returned, to become part of the general funds of the Grand Lodge. A decree was entered in favor of the plaintiff and its right established in the sick and death benefit funds of the local lodges.

We have been referred to only one Ohio case, *Grand Grove, U. A. O. D.,* v *Mullen* (1903), 1 C. C. (N. S.) 63, 24 C. C. 239. This case sheds very little light on the subject. Distribution of the last of the funds of a local lodge was made among all the seventeen remaining members who were the only persons having

any beneficial interest. The court said the distribution to the members was in violation of the constitution and bylaws of the subordinate lodge and of the Grand Lodge, but neglected to tell us exactly what these provided. The court declared that the Grand Lodge had no proprietary interest in the funds, and that if it were to receive possession of them it would be a mere naked trustee.

The case of *Hermione Lodge No. 16, K. of P.*, v. *Grand Lodge, K. of P.* (1946), 248 Ala. 473, 28 So. 2d 166, 168 A. L. R., 948, decides only a question of pleading, recognizing the right of the Grand Lodge to seek to enforce any rights it might have under the law of the Supreme Lodge to the effect that when a subordinate lodge ceases to exist its funds shall become the property of the Grand Lodge within whose domain it is located. The fifth paragraph of the A. L. R. headnotes reads:

"In a suit by a defunct local lodge of a beneficial society and its members for a division among the members of the property of the lodge, a cross bill by the grand lodge asserting title to the property, asking affirmative relief in regard thereto and seeking possession of the records of the lodge to which it is entitled under the laws and constitution of the order, and calling for proper orders of the court enforcing and protecting the rights of all parties, is appropriate."

Of some interest to us is this case note appearing on page 961 of 168 A. L. R.:

"In *Grand Grove, U. A. O. D.*, v. *Mullen* (1903), 1 Ohio C. C. N. S. 63, 24 Ohio C. C. 239, the constitution of the Grand Grove provided for the distribution of the funds of a dissolved subordinate grove by the Grand Grove as trustee. The court, probably feeling that it was better to recognize a 'fait accompli' than to take things back to the beginning only to arrive at the same end, approved the action of a subordinate grove in distributing its funds among its members pursuant to their unanimous vote to dissolve and so dispose of the funds, since the members of the local grove were ultimately entitled to the funds."

Hence, there is a lack of any clearcut authority in Ohio, and a division of authority elsewhere. The facts and circumstances, as well as the constitutions, bylaws and regulations of different associations, vary with each case. Of significance, however,

is the fact that the proceedings involved in these cases are equitable rather than legal, or at least involve equitable considerations.

In the case now before us, we find the original provision of the Constitution and General Laws existing at the time Amokee Tribe No. 132 was chartered was that ''The property of an extinct Tribe must be held in trust for the future use of its members.'' This is at variance with the later provision of 1946 that ''All wampum or funds of a Tribe are trust funds of the Order.''

Whatever beneficial interest the members of Amokee Tribe No. 132 had in its funds could not be arbitrarily abolished without their consent by fiat of the Great Council.

The judgment appealed from is an unqualified money judgment without limitation or condition or reference to the beneficial interests of the members of the defunct tribe. Before any disposition of the controversy is made, that beneficial interest must be adjudicated, along with the interest, if any, of the Great Council. The question whether this can or should be done in the present action is not now before us.

The judgment appealed from will be, and hereby is, reversed and the cause remanded to the Court of Common Pleas for further proceedings according to law.

*Judgment reversed.*

Sherer, P. J., and Kerns, J., concur.