NATIONAL GRANGE OF THE ORDER OF PATRONS
OF HUSBANDRY et al., Appellants,

v.

LAHMON et al., Appellees.

[Cite as *Natl. Grange of Order of Patrons of Husbandry
v. Lahmon* (1998), 129 Ohio App.3d 580.]

Court of Appeals of Ohio,
Fifth District, Licking County.

No. 98CA28.

Decided Aug. 28, 1998.

*Denis J. Murphy* and *Charles L. Bluestone*, for appellants.

*Bradley P. Toman*, for appellees.

HOFFMAN, Judge.

Plaintiffs-appellants National Grange of the Order of Patrons of Husbandry et al. appeal the February 10, 1998 judgment entry of the Licking County Court of Common Pleas, which granted summary judgment in favor of defendants-appellees Laylin Grange No. 1763 and third-party defendants-appellees Paul Suver, Lola Roley, as executor for the estate of Helen Megaw, and Forest O. Williams, as executor of the estate of Frank W. Williams.

## STATEMENT OF THE FACTS AND CASE

On December 29, 1910, the Laylin Grange of Licking County, Ohio, appellee, applied for a charter from the National Grange of the Order of Patrons of Husbandry, appellant, for a dispensation to form a subordinate grange in Granville, Ohio. On January 3, 1911, appellant granted appellee's application for a dispensation. Subsequently, on April 1, 1911, appellant issued a charter to appellee to operate as a subordinate grange. The charter was in full force and effect at all times relevant to the transactions that are the subject of the instant appeal.

In 1922, appellee acquired a parcel of property on which grange activities would be conducted. Mary A. Anderson conveyed fee simple title to the property to George Shockley, H. Myers, and J.S. Graham, as trustees of appellee by deed recorded in Licking County, Ohio, on August 25, 1922. The real estate conveyed in 1922 is the same property that is the subject of the instant action. In 1911, when appellee became a subordinate grange, and in 1922, when appellee purchased the property, neither appellant's constitution nor its bylaws placed any restrictions on the disposition of real property owned and/or used by a subordinate grange. In 1922, appellant's Digest of Laws, Decisions and Rulings[1] merely provided:

---

1. The digest is a book, published from time to time, which contains the most recent version of appellant's constitution and bylaws, and a compilation of the laws, decisions, and rulings of the order as amended.

"A Subordinate Grange owning property of value, cannot legally surrender its charter until its financial business has been closed and the property rights of its members secured." Digest of Laws, Decisions and Rulings of the National Grange, Chapter 3, Section 14.

The first provision discussing the power of a subordinate grange to convey and sell its real property upon the vote of its members appeared in the 1933 Digest. In the same year, appellant expanded Article 14 of the bylaws as follows:

"Sec. 14(a). No Subordinate Grange shall sell, or encumber real estate except by vote of the Grange at a regular meeting on resolution presented at a previous regular meeting * * *.

"Sec. 14(b). When ever a Grange has ceased to function as such and has failed to make disposition of its property, such property than shall become the property of the State Grange * * *."

Over the years, and from time to time, appellant amended the constitution and bylaws. In 1987, appellant amended the constitution and bylaws to establish a procedure for the sale of real property and the distribution of the sale proceeds. Pursuant to the 1987 amendments, a subordinate grange is required to obtain the consent of the state grange for the sale of real property prior to the sale. Specifically, the amendment to the constitution provides:

"When a Grange of any of the divisions of the Order shall sell, encumber or in any other way transfer real and/or personal property owned by such Grange, the proceeds from such sale, encumbrance or transfer shall be retained by the Order for use in accordance with general purposes of the Order, provided that, the procedures for such retention shall be provided for in the By–Laws of the National Grange."

The amendment to the bylaws provides:

"(F) When a sale of real property is concluded, the selling Subordinate or Pomona Grange shall account for the net proceeds of the sale received at the time of settlement and shall remit all but the sum of $1,000 of such net proceeds to the Grange Council or State Grange having jurisdiction to be held in trust for the said Subordinate or Pomona Grange. The selling Subordinate or Pomona Grange shall assign all right, title and interest to the net proceeds of the sale to be paid after the date of settlement to the said Grange Council or State Grange having jurisdiction; and the existence of such assignment shall be reflected in any note or other evidence of indebtedness executed by the purchaser and in any mortgage or deed of trust securing the payment of such indebtedness. Pursuant to the required assignment, the note or other evidence of indebtedness shall require the purchaser to make all payments in satisfaction of the indebtedness directly to the said Grange Council or State Grange having jurisdiction."

At the regular meeting of Laylin Grange No. 1763 held on July 28, 1994, the membership discussed and considered the matter of selling the real estate and building owned by the trustees of appellee. After much consideration the property was sold in the summer of 1995, to Robert Lahmon for $30,000. Lahmon subsequently sold the property to Angus and Sally McPhail.

On May 13, 1996, appellant filed a complaint in the Licking County Court of Common Pleas naming Lahmon, appellee's last three trustees, and appellee as defendants. On January 22, 1997, appellant filed an amended complaint adding Evelyn Noble, appellee's last secretary/treasurer, and Angus and Sally McPhail as additional defendants. In the amended complaint, appellant sought rescission of the deed of conveyance from appellee to Lahmon and restoration of the property to appellee's trustees. Appellant also sought an order requiring appellee to comply with appellant's constitution and bylaws. Alternatively, appellant sought a money judgment against the trustees and secretary/treasurer in the amount of $30,000.

The parties filed answers. Lahmon filed a cross-claim against appellee and the trustees, individually, seeking money damages in the amount of $30,000 for breach of warranty of title or, alternatively, breach of contract. Appellee and the individual trustees filed answers to the cross-claim.

From November 6, 1996, until August 27, 1997, a flurry of activity surrounded the case, involving a series of motions for summary judgment, memoranda of decisions, motions to reconsider, judgment entries, and revised judgment entries.

On September 11, 1997, appellee filed a motion for summary judgment seeking dismissal of all the claims against appellee and the other parties, asserting that the 1987 amendments relating to the sale of real property were unenforceable. After conducting an oral hearing on November 21, 1997, the trial court granted appellee's motion for summary judgment via a memorandum of decision dated January 21, 1998. The trial court's decision was memorialized in a judgment entry dated February 10, 1998.

It is from the January 21, 1998 memorandum of decision and February 10, 1998 judgment entry that appellant prosecutes this appeal, raising the following assignments of error:

"I. The trial court erred in its reliance on *Great Council of Ohio of the Improved Order of Red Men v. Tyler.*

"II. The trial court erred in excusing the Laylin Grange trustees' failure to comply with the public policy of this state as expressed in Revised Code Section 1715.43.

"III. The trial court erred by failing to declare the June 24, 1995 deed to Robert Lahmon to be void, and restoring title to the grange hall to Laylin Grange."

I

In the first assignment of error, appellant maintains that the trial court erred in relying on *Great Council of Ohio of Improved Order of Red Men v. Tyler* (1966), 6 Ohio App.2d 97, 35 O.O.2d 190, 216 N.E.2d 631.

In *Great Council,* the Court of Appeals for Miami County held:

"Whatever beneficial interest the members of Amokee Tribe No. 132 had in its funds could not be arbitrarily abolished without their consent by fiat of the Great Council." *Id.* at 102, 35 O.O.2d at 193, 216 N.E.2d at 634–635.

In the instant action, the trial court relied upon this language as the basis for its holding that "[appellant] cannot unilaterally abolish the vested property rights of [appellee's] members through the unilateral amendment of the Constitution and By–Laws of the National Grange."

We find that *Great Council* is distinguishable from the instant action. Unlike the local tribe in *Great Council,* appellee's members consented to appellant's amending the constitution and bylaws through their membership in the national organization. The organizational structure of the order involves a delegation-type democracy with members of local granges serving as delegates for regional, state, and national divisions of the order. Because appellee's members had representation during the policy-making decisions, their beneficial interests were not "arbitrarily abolished without their consent by fiat." Contrary to the trial court's finding, we find that appellant did not unilaterally abolish appellee's vested property rights. Accordingly, we find that the trial court erred in relying on *Great Council* in support of its decision.

■ Although we find the trial court's reliance on *Great Council* misplaced, we find that the trial court properly relied upon *McKinney v. Order of United Commercial Travelers of Am.* (1931), 124 Ohio St. 139, 177 N.E. 206. In *McKinney,* the Ohio Supreme Court stated:

" 'Under the reservation of power to amend or alter the laws, or an agreement by the member to comply with laws thereafter enacted, the association may, for the good of the order, adopt laws which affect the contract, so long as they are reasonable and in harmony with the general purpose and policy of the association; *but the association cannot bind the member by laws which materially alter or diminish the value of his contract, or impair his vested rights.'* " (Emphasis added.) *Id.* at 146, 177 N.E. at 209, quoting 2 Cooley's Briefs on Insurance, 1181.

When Mary Anderson conveyed the property at issue in fee simple to appellee's trustees in 1922, appellee's rights in the property vested. Appellant had no interest in the property. The 1987 amendments require a subordinate grange to remit the proceeds from the sale of real or personal property owned by the subordinate grange to the order for the use of the order. Because the constitution and bylaws in existence at the time of appellee's charter in 1911 and at the time of appellee's purchase of the property in 1922 were silent on the issue of the sale of property and distribution of the proceeds therefrom, and because appellee had a vested right in the property, we hold that appellant cannot bind appellee by the 1987 amendments, as those amendments materially impair those vested rights. See *id.*

Appellant's first assignment of error is overruled.

## II

In the second assignment of error, appellant contends that the trial court erred in excusing the failure of appellee's trustees to comply with R.C. 1715.43. Specifically, appellant asserts that appellee failed to secure the approval of the membership and failed to follow the order's regulations regarding the conveyance of property.

Because we determined above that appellant has no interest in the property at issue, we hold that appellant does not have standing to raise a claim of lack of notice to appellee's members.

Appellant's second assignment of error is overruled.

## III

In the third assignment of error, appellant argues that the trial court erred in failing to declare the June 24, 1995 deed conveying the property from appellee to Lahmon void and in failing to restore title of the property to appellee.

Because we held above that appellant has no interest in the property, we find it unnecessary to determine whether Lahmon was a bona fide purchaser and whether the deed was subject to rescission.

Appellant's third assignment of error is overruled.

The judgment entry of the Licking County Court of Common Pleas is affirmed.

*Judgment affirmed.*

FARMER, P.J., and WISE, J., concur.